Filed 6/3/21 In re Y.J. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Y.J., a Person Coming Under the Juvenile Court Law. | B309311 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 19CCJP02461A) |
| Plaintiff and Respondent, | |
| T.J., | |
| Defendant and Respondent, | |
| v. | |
| F.F., | |
| Defendant and Appellant. | |

APPEAL from findings and orders of the Superior Court of Los Angeles County. Stephen C. Marpet, Judge. Affirmed.

Janelle B. Price for Defendant and Appellant.

Richard L. Knight for Defendant and Respondent.

No appearance for Plaintiff and Respondent.

————————————

Mother F.F. appeals an order terminating jurisdiction over her teenage daughter Y.J., who had an infant child of her own. The juvenile court granted joint legal and physical custody of Y.J. to mother and father T.J., with primary care to father. The court ordered "visits as arranged between the parties," believing that as a teenage mother with significant responsibilities, Y.J. "should be able to visit mother when the child thinks it's appropriate to have visits with her mother." Mother challenges the visitation portion of the order, arguing the court impermissibly delegated authority to Y.J. and father to decide if visits with mother would occur at all.

We reject mother's characterization of the order. This is not an improper-delegation case. The parents were granted joint legal and physical custody, so mother had a statutory right to "significant periods of physical custody" of Y.J., to be shared with father "in such a way so as to assure a child of frequent and continuing contact with both parents." (Fam. Code, § 3004.) For practical purposes, the portion of the court's order granting visitation "as arranged between the parties" merely restated their joint custody rights. The court properly exercised its discretion on this record to decline to order any more specific structure for the parties' joint custody arrangement because it was not in Y.J.'s best interests. If the current arrangement becomes unworkable or circumstances change, mother may seek modification in superior court in the pending family law matter. We affirm.

## BACKGROUND

Mother has four children— three children with father Steven C. (deceased), and Y.J. with father T.J. Only Y.J. is subject to the current proceedings. After she was raped by her

half-siblings' father Steven C., 14-year-old Y.J. gave birth to a son in July 2019.

The family has a long history of child welfare referrals since Y.J. was born, several of which were substantiated. In the current proceedings, the juvenile court sustained an allegation mother failed to protect Y.J. from Steven C.'s sexual abuse, which led to Y.J.'s pregnancy. (Welf. & Inst. Code, § 300, subd. (d).)[1] For disposition, the juvenile court released Y.J. to her parents with her residing with mother. The court also ordered family maintenance services.

Custody and visitation issues arose throughout the court's period of supervision. Since Y.J. was residing with mother, the complaints initially came from father. In August 2019, a section 347 petition was filed. The petition indicated all four children were removed from mother's home and detained by the juvenile court due to the alleged unsanitary and hazardous condition of the home, including an odor of marijuana. It also alleged father had an unsecured firearm in his home. A subsequent section 387 dependency petition was filed seeking a more restrictive placement because mother failed to comply with juvenile court orders. Father also failed to comply with court-ordered individual counseling.

The court held two hearings on these petitions, dismissing them and releasing Y.J. home to her parents, with mother and father to "work out an appropriate shared custody arrangement" for her. At the first hearing, father complained about visitation with Y.J. Y.J.'s counsel told the court the lack of visitation was

---

[1] Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.

3

Y.J.'s choice.  In the order following this hearing, the court noted Y.J. wished to stay with mother, and the court directed the Los Angeles County Department of Children and Family Services (DCFS) "to continue to encourage the child to visit her father as much as possible.  The court informs father to be patient regarding the wishes of his daughter.  The father can call his daughter as much as possible and whenever the child desires to visit her father this should occur."

At the second hearing, father's counsel requested "some kind of contact between father and [Y.J.]," including overnights, because he hadn't seen her for months.  DCFS noted Y.J. was a 14-year-old minor mother.  She had been encouraged to visit father, but didn't want to sleep over or take the baby.  DCFS did not intend to force her to do so.  The court told father, "Your daughter has a child.  She's got school.  She's busy.  She doesn't want to visit you.  I can't force her to visit with you."  Father responded, "If I have 50/50 custody it doesn't matter?  I have kids."  The court told him, "It matters but it doesn't matter because I have a 14-year-old child who makes her own choice.  Under the Family Code at age 14 a child can decide who she wants to live with and who she wants to visit."  Father added, "I['m] still supposed to get my visits."  The court said, "[S]he has a mind of her own and she's 14 and she can make choices that she doesn't want to visit you.  I can't force her to visit.  I have an order.  It's in place but that's as far as it goes."  The court and parties noted Y.J. was not detained from the parents and custody was "50/50."

Issues with Y.J. and mother cropped up during the next review period.  At the time, Y.J. mostly did not want to visit father, until she went to his house one afternoon after school

4

without telling mother.  Father told the social worker Y.J needed a "break" from mother.  DCFS reported Y.J. had "weekly unmonitored visits with father.  However, during this period, mother and father continue to not . . . communicate with each other and continuously ask the Department to intervene."

At the six-month review hearing, mother requested a written visitation schedule, and father was open to it.  Y.J.'s counsel opposed a set visitation schedule.  Y.J. did not want one because she was overwhelmed with court-ordered services, school, and caring for her new baby.  She felt comfortable reaching out to father whenever she wanted to see him.  Father worried the "accusation of kidnapping" would continue from mother without a schedule, and mother worried father would not inform her when Y.J. was visiting him.

The court declined to set a visitation schedule:  "I don't think a set schedule for a 14-year-old with her own child is necessary.  The parents need to use Talking Parents and when the child wants to go see dad for a while she can, but I don't want to put her in the middle so that she's forced to go when she has all these things.  She's a mother."  In the order for the hearing, the court wrote, "The mother and father to work out an appropriate shared custody arrangement of the child with primary custody with the mother.  The parents to communicate through 'talking parents' in regards to the custody arrangement if they are unable to speak to each other.  [¶]  The court will not require the child to follow a set visitation schedule but will give the child the discretion to call her father whenever she wants to see him.  The court encourages the child to be respectful and considerate in the shared custody arrangement."

During the next review period, Y.J. stayed with father and did not return to mother. She was not ready to return to mother's home and did not want a set visitation schedule. Mother and father were not willing to work out a schedule between them. Y.J. "clearly stated that she wanted to remain with father and she shouldn't have to feel forced to return to mother's home at this time. [Y.J.] stated that she wants to be able to choose freely and should decide for herself when she returns to mother's home."

In a June 2020 status report, the social worker reported Y.J. did joint visitation with mother and father and liked to stay at each parent's home for a few weeks at a time. But DCFS had been unable to work out a workable visitation plan because mother and father were unwilling to work together. They expected the social worker to resolve conflicts every time Y.J. chose to extend her stay at one house or the other. They wanted the social worker to enforce visitation "as it meets mother, and father's needs but not that of the child." The social worker reported the "biggest concern" for the family was working out a visitation schedule.

A court-appointed special advocate examined Y.J. and reported Y.J. was "comfortable" living with father and staying with mother occasionally. She wanted the dependency case closed. The advocate felt it "important that [Y.J.] has the ability to decide which of her parents she would like to live with, and what her visitation schedule should be with the other parent."

In a November 2020 status report, it was reported Y.J. had lived with father since June 2020, and she visited mother when she wanted to see her. The parents still could not agree on any

visitation schedule. DCFS recommended closing the case and granting shared legal and physical custody to the parents.

At a November 3, 2020 review hearing, the juvenile court terminated jurisdiction. The primary issue was visitation. Y.J.'s counsel argued Y.J. was doing well in father's care and would like to continue living with him. She wanted to visit mother, but did not want a visitation schedule. Counsel argued she was a teenage mother and wanted the flexibility to decide where to live.

DCFS recognized "ordinarily . . . it would be ridiculous for a 15-year-old to be running the show," but the social worker had spent countless hours trying to mediate the complaints from mother about visitation. DCFS saw no risk at either home, so it was recommending joint legal and joint physical custody. It did not believe mediation would be helpful because the parties would not follow any mediated agreement. DCFS believed there was "nothing left to be done for this family. If there's a further fight to be had it's in family law."

Mother's counsel requested Y.J. be placed in her primary care because she believed there was an ongoing risk with father.

Father's counsel submitted on the issue of joint physical and legal custody, with primary care to father.

The court held: "The court's going to find that this child is home safe with the parents. I'm going to terminate jurisdiction today with joint legal, joint physical, primary to father, and visits as arranged between the parties. And that will be the order of the court. [¶] The court is feeling based on the fact that this minor is a minor mother that primary should be with father at this time and should be able to visit mother when the child thinks it's appropriate to have visits with her mother. This is a

situation where this is a minor mother and that's why the court is making this order."

Mother's counsel responded: "Your honor, that's over mother's objection."

The court issued a written custody judgment on November 6, 2020 that granted joint physical and legal custody to the parents with "Visitation as agreed on by the parties."

On the same date, the judgment was filed in superior court in existing family law case number YF004252.[2]

## DISCUSSION

Mother contends the juvenile court improperly delegated its authority to Y.J. and father to determine whether Y.J. would visit mother. When terminating dependency jurisdiction, the juvenile court enjoys broad discretion to make custody and visitation orders in the best interests of the child. (§ 362.4; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4.) We review the decision for abuse of discretion, and we "may not disturb the order unless the court ' " 'exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].' " ' " (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.)[3]

---

[2]    We sua sponte take judicial notice of the docket in Los Angeles Superior Court case no. YF004252. (Evid. Code, § 452, subd. (c).)

[3]    Because we conclude mother has misinterpreted the effect of the juvenile court's custody and visitation order, we reject her argument that this is a legal question of improper delegation that we must review de novo.

8

*Forfeiture*

After the juvenile court granted joint custody and ordered "visits as arranged by the parties," mother's counsel informed the court the order was "over mother's objection." DCFS argues this was insufficient to preserve mother's challenge to the visitation order, so she forfeited the issue. We disagree.

It is settled that we "will not consider a challenge to a ruling if an objection could have been but was not made in the trial court," including in dependency matters. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.) Nor will general objections preserve an issue on appeal. (*In re Daniel B.* (2014) 231 Cal.App.4th 663, 672.)

Under the circumstances here, however, mother's objection preserved her challenge to the visitation order. The visitation schedule was a prominent issue throughout the juvenile court's supervision of Y.J. It came up over and over, and the parents could not agree on a schedule that worked with Y.J.'s parenting and school obligations. Consistent with the position taken by DCFS, Y.J.'s counsel, and the court-appointed special advocate, the court repeatedly found Y.J. was best served *without* a structured schedule. At the termination hearing, mother lodged her objection immediately after the court once again explained why it was ordering joint custody with visits when Y.J. felt it appropriate. The court made very clear it believed Y.J.'s best interests lay in not setting a fixed visitation schedule. Had mother more specifically objected, the court would not have changed its order, so any further elaboration on the objection would have been futile. Mother has not forfeited the issue.

*Joint Custody and Visitation*

Generally, "[a] visitation order may delegate to a third party the responsibility for managing the details of visits, including their time, place and manner. [Citation.] That said, 'the ultimate supervision and control over this discretion must remain with the court . . . .' " (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1123.) To challenge the visitation order here, mother relies on the many cases invalidating visitation orders that improperly delegated the court's authority to grant visitation to third parties, such as a parent or the child. (See *ibid.* ["Several appellate courts have overturned visitation orders that delegate discretion to determine whether visitation will occur, as opposed to simply the management of the details."].)

None of the cases mother cites involved visitation for parents awarded *joint physical custody* as part of a termination of dependency jurisdiction, which we think is the key distinction that validates the court's order here. For example, in *T.H.*, the juvenile court terminated jurisdiction, granted joint legal custody to the parents with physical custody to mother, and ordered visitation " 'to be determined by the parents.' " (*T.H., supra,* 190 Cal.App.4th at p. 1122.) On the father's appeal, the Court of Appeal invalidated the visitation order because it permitted mother—the custodial parent—to "conceivably agree to only one visit a year or less without violating the letter of the court's order," which "effectively delegates to mother the power to determine whether visitation will occur at all." (*Id.* at p. 1123.) Given the mother and father did not get along and the mother did not want the father to have any visitation, the juvenile court "abused its discretion by framing its order in a way that gave mother effective veto power over" the noncustodial father's right

to visitation.  (*Id.* at pp. 1123–1124; see also *In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1504 [improper delegation of noncustodial parent's visitation to child following termination of reunification services].)

In re S.H. (2003) 111 Cal.App.4th 310 (*S.H.*) invalidated a similar visitation order as part of the mother's reunification plan after the juvenile court removed her children from her custody. "Noting the children were fearful of their mother and the boys had refused visits with her during their detention," the juvenile court ordered, " 'if the children refuse a visit, then they shall not be forced to have a visit.' " (*Id.* at p. 316.)  On the mother's appeal, the Court of Appeal focused specifically on visitation as a critical component of a reunification plan for a noncustodial parent:  "Visitation is a necessary and integral component of any reunification plan.  [Citations.]  'An obvious prerequisite to family reunification is regular visits between the noncustodial parent or parents and the dependent children "as frequent[ly] as possible, consistent with the well-being of the minor." ' " (*Id.* at p. 317, fns. omitted.)  While the children's input is a factor to consider when administering visitation, "the power to decide whether *any* visitation occurs belongs to the court alone." (*Ibid.*)  Thus, the child's wishes may not "be the *sole* factor in determining whether any visitation takes place, either as a formal matter or . . . by effectively giving the children the power to veto all visits." (*Id.* at p. 319; see also *In re Julie M.* (1999) 69 Cal.App.4th 41, 49 [invalidating order made during reunification period requiring consent of children for visits with noncustodial parent because it undermined reunification efforts].)

This is not a reunification case. Nor does it involve a noncustodial parent. Dependency jurisdiction was terminated, and mother and father were given joint legal and physical custody. "Joint physical custody" is defined in the Family Code to mean that "each of the parents shall have significant periods of physical custody. Joint physical custody shall be shared by the parents in such a way so as to assure a child of frequent and continuing contact with both parents, subject to Sections 3011 and 3020." (Fam. Code, § 3004; see *Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 663–664 [" 'Where children "shuttle[] back and forth between two parents" [citation] so that they spend nearly equal times with each parent, or where the parent with whom the child does not reside sees the child four or five times a week, this amounts to joint physical custody.' "].)

Although the juvenile court awarded "visits as arranged between the parties," we look to the legal effect of the court's order, not the label the court attached to it. (*Celia S. v. Hugo H., supra,* 3 Cal.App.5th at p. 664.) The court's order on visitation "as arranged between the parties" merely restated mother's rights as a joint custodial parent. The court made clear that it was exercising its discretion *not* to force Y.J. into a set schedule, given the demands on her as a teenage mother going to school and navigating the contentious relationship between her parents. We need not repeat our recitation of the record set forth above, but the record supported that decision. The court's refusal to order fixed visitation beyond the grant of joint physical custody fell within the bounds of its discretion to determine Y.J.'s best interests were served by not setting a fixed visitation schedule.

In short, the juvenile court terminated jurisdiction because Y.J. was no longer at risk from either parent. The court's concerns under the dependency law were at an end. The judgment was filed in the pending family law case involving the parents, as was statutorily required. (§ 362.4, subd. (b); *In re Chantal S.* (1996) 13 Cal.4th 196, 203; *In re John W.* (1996) 41 Cal.App.4th 961, 976–977.) In light of the determination that further visitation was not in Y.J.'s best interests, any further disputes over the joint custody arrangement and visitation must be addressed in the pending family law case. (See *In re Chantal S., supra,* at p. 201 ["The family court is established to provide parents a forum in which to resolve, inter alia, private issues relating to the custody of and visitation with children. In that setting, parents are presumed to be fit and capable of raising their children."]; *In re John W., supra,* at p. 975 ["The juvenile courts must not become the battleground by which family law war is waged by other means. It is common knowledge that the resources of local government social service agencies are stretched thin; in the juvenile dependency context those resources are manifestly intended to be directed at neglected and genuinely abused children."].)[4]

---

[4] The juvenile court's custody order "shall not be modified in a proceeding or action described in Section 3021 of the Family Code unless the court finds that there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interests of the child." (§ 302, subd. (d).) If circumstances change, mother is free to make that showing in the family court. (*In re Marriage of David & Martha M.* (2006) 140 Cal.App.4th 96, 101.)

## DISPOSITION

The order is affirmed.

BIGELOW, P. J.

We concur:

STRATTON, J.

WILEY, J.