Filed 8/26/16: pub. & mod. order 9/23/16 (see end of opn)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CELIA S., | |
| Appellant, | G052124 |
| v. | (Super. Ct. No. 13P001238) |
| HUGO H., | O P I N I O N |
| Respondent. | |

Appeal from an order of the Superior Court of Orange County, Theodore R. Howard, Judge. Reversed and remanded.

Gibson, Dunn & Crutcher, Blaine H. Evanson, Krista Hernandez, Jennafer M. Tryck, Krista DeBoer, Vania Wang; Family Violence Appellate Project, Jennafer Dorfman Wagner, Shuray Ghorishi, Erin C. Smith, Nancy K.D. Lemon; Legal Aid Society of Orange County, Robert Cohen, Yolanda Omana, and Jamie Sanderson for Appellant.

Law Offices of D. Michael Bush and D. Michael Bush for Respondent.

\* \* \*

Family Code section 3044 establishes a rebuttable presumption that prevents a trial court from awarding sole or joint physical or legal custody of a child to a parent who commits an act of domestic violence against the other parent, unless the offending parent establishes by a preponderance of the evidence that an award of custody to that parent is in the child's best interest.[1]

Here, the trial court found respondent Hugo H. committed an act of domestic violence against appellant Celia S., and therefore awarded her sole legal and physical custody of the couple's two children because Hugo presented no evidence showing an award of custody to him was in the children's best interest. Nonetheless, the court also awarded Hugo "visitation" consistent with the "50/50 timeshare" arrangement to which Celia and Hugo agreed nearly a year earlier. Under that arrangement, the children alternated living with Celia for one week and then Hugo for a week.

Celia appeals, arguing the trial court may not circumvent section 3044 by characterizing its order that granted Hugo joint physical custody as an order that merely awarded him visitation. We agree. The nature of any order must be determined based on the order's legal effect, not the label the trial court attaches. Based on the Family Code definition of "joint physical custody" and the case law applying that definition, we conclude any arrangement authorizing children to spend roughly equal time with each parent is a joint physical custody arrangement. The trial court therefore abused its discretion in awarding Hugo equal time with the children without requiring him to establish that arrangement was in the children's best interest. We reverse that portion of the court's order and remand for further proceedings.

---

[1] All statutory references are to the Family Code.

# I

## FACTS AND PROCEDURAL HISTORY

Celia and Hugo maintained a romantic relationship for many years, but never married. They have two children: Christian, age 12, and Jayleen, age 6. According to Celia, several acts of domestic violence marred their relationship and eventually led to their separation. In February 2014, Celia and Hugo stipulated to joint legal and physical custody of their children with a "50/50 timeshare" under which the children alternated weeks with each parent. The trial court entered the stipulation as an order.

In January 2015, Celia invited Hugo to her apartment to have dinner with her and the children. While Celia prepared dinner in the kitchen, Christian did his homework at the dining room table and Jayleen took a nap on the living room couch. Hugo also sat at the dining room table waiting for Christian to finish his homework. According to Celia, Hugo was watching loud videos on his cell phone that disrupted Christian. Hugo denies this, and instead testified he simply was playing on his phone without disturbing anyone.

When Christian asked Celia for help with his math homework, she came to the dining room table and set up her laptop computer to look up how to do Christian's homework. At that point, Hugo received a phone call and got up from the table to answer it. Celia sat down in the chair where Hugo had been sitting and worked with Christian on his homework. According to Celia, Hugo returned to the table after he completed his call and demanded that Celia give him the chair back. When she refused to move, Celia claims Hugo grabbed her by the hair and pulled her toward him. Celia then tried to push Hugo away and he punched her in the ribs or stomach, causing her to lose her breath. An argument ensued and Celia demanded Hugo leave her apartment. Celia called the police when Hugo continued to loiter outside the apartment. The police arrived and arrested

3

Hugo for domestic violence after Christian told them he saw Hugo hit his mother. The police issued an emergency protective order requiring Hugo to stay away from Celia and the children.[2]

The next day, Celia filed a petition for a domestic violence restraining order against Hugo and also an order awarding her sole legal and physical custody of the children. The trial court issued a temporary restraining order and scheduled an evidentiary hearing.

At that hearing, Celia testified Hugo pulled her hair and punched her in the stomach or ribs when she refused to yield her chair to him. Hugo testified that he did not pull Celia's hair or hit her. According to Hugo, Celia came to the dining room table and started an argument about whether he was talking to other women. He testified he left the apartment without touching Celia, and then the police arrested him based on Christian's false statement that Hugo had punched Celia.

Neither child testified at the hearing, but the court received a report from a social worker who had interviewed both children. Although Christian told the police he saw Hugo punch Celia, he told the social worker he left to go to the bathroom when Celia came to the dining room table and he only heard the fight from the other room. But he also told the social worker he previously saw Hugo spit in Celia's face. Jayleen told the social worker she woke up when her parents started to argue and she saw Hugo pull Celia's hair and punch her. She also told the social worker she had seen Hugo hit Celia before and that she was afraid of Hugo when he hit her mother. At the time of these events, Christian was 10 years old and Jayleen had just turned five.

The trial court acknowledged the many conflicts between Celia's and Hugo's testimony, the inconsistencies in the stories Christian told the police and the

---

[2] The record does not include any information on how the criminal domestic violence proceedings against Hugo were resolved.

social worker, and the impact Jayleen's age had on her ability to recollect and recount what she saw, but the court concluded Celia's version of the events "hung together better" and was "more credible." The court therefore found Celia "is a victim of domestic violence perpetrated by [Hugo]" and issued a one-year domestic violence restraining order that required Hugo (1) not to harass, threaten, assault, disturb or contact Celia or the children, "except in the course of court-ordered visitation with [the children]," and (2) to stay 100 yards away from Celia, her work and apartment, the children, and their school. The court also ordered Hugo to complete a 52-week batterer intervention program.

As to custody, the court awarded Celia sole legal and physical custody, but ordered that Hugo "will have visitation with the minor children as the court will find that is still in the best interest." The court explained the section 3044 rebuttable presumption against awarding sole or joint custody to a parent who committed domestic violence required the court to award Celia sole custody, but the court set a hearing to review the matter after Hugo completed the 52-week batterer intervention program to determine whether he could present evidence to rebut the section 3044 presumption.

Next, the court acknowledged the parties' current custody arrangement called for a "50/50 timeshare" with Celia and Hugo having the children in alternating weeks. The court explained it was "going to leave the order the way it is," and only change the location where the parties exchanged the children each week in recognition of the restraining order's prohibition against Hugo coming to Celia's apartment. The court's written order awarded Celia sole legal and physical custody, and awarded Hugo visitation described in an attachment to the order. The attachment was a copy of the page from the parties' February 2014 stipulation awarding them joint legal and physical custody and establishing their 50/50 timeshare. The court crossed out the two provisions regarding joint legal and physical custody, but adopted the provision concerning the

5

50/50 timeshare without any change other than the location where Celia and Hugo would exchange the children each week.

Celia timely appealed the trial court's decision awarding Hugo a 50/50 timeshare despite the domestic violence restraining order and the award of sole legal and physical custody to Celia. Hugo did not appeal to challenge the court's decision to issue the restraining order.

II

DISCUSSION

A.    *Governing Legal Principles on Child Custody and Domestic Violence*

When deciding a petition for a domestic violence restraining order, the court has broad discretion also to "make an order for the custody of a child . . . that seems necessary or proper." (§ 3022; see § 3021; *Erika K. v. Brett D.* (2008) 161 Cal.App.4th 1259, 1268.) The guiding principle for the court in making any custody or visitation order is that the order must be in the child's best interest. (See §§ 3011, 3020, 3040.)

In this context, the Legislature has found and declared that (1) "it is the public policy of this state to assure that the health, safety, and welfare of children shall be the court's primary concern in determining the best interest of children when making any orders regarding the physical or legal custody or visitation of children"; (2) "the perpetration of child abuse or domestic violence in a household where a child resides is detrimental to the child"; and (3) "it is the public policy of this state to assure that children have frequent and continuing contact with both parents . . . and to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy, except where the contact would not be in the best interest of the child." (§ 3020, subds. (a) & (b).)

To further these policies, section 3044 establishes a rebuttable presumption that awarding physical or legal custody to a parent who has committed domestic violence

6

is detrimental to a child's best interest: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence against the other party seeking custody of the child or against the child or the child's siblings within the previous five years, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child." (§ 3044, subd. (a).)

This presumption is mandatory and the trial court has no discretion in deciding whether to apply it: "[T]he court *must* apply the presumption in any situation in which a finding of domestic violence has been made. A court may not '"call . . . into play" the presumption contained in section 3044 only when the court believes it is appropriate.'" (*In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1498 (*Fajota*); see *Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 736 (*Christina L.*) ['"Because a DVPA restraining order must be based on a finding that the party being restrained committed one or more acts of domestic abuse, a finding of domestic abuse sufficient to support a DVPA restraining order necessarily triggers the presumption in section 3044'"].)

The section 3044 presumption is rebuttable and "'may be overcome by a preponderance of the evidence showing that it is in the child's best interest to grant joint or sole custody to the offending parent.'" (*Christina L.*, *supra*, 229 Cal.App.4th at p. 736; see § 3044, subd. (a) ["This presumption may only be rebutted by a preponderance of the evidence"]; *Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1055 (*Keith R.*).) The legal effect of the presumption is to shift the burden of persuasion on the best interest question to the parent who the court found committed domestic violence. (*Christina L.*, at p. 736.)

Section 3044 also prohibits the parent who committed domestic violence from using the statutory preference for frequent and continuing contact with both parents

to rebut the presumption, "in whole or in part."[3]  (§ 3044, subd. (b)(1); *Keith R.*, *supra*, 174 Cal.App.4th at p. 1056.)  If the trial court determines a parent has overcome the section 3044 presumption and awards sole or joint custody to a parent who committed domestic violence, the court must state the reasons for its ruling in writing or on the record.  (§ 3011, subd. (e)(1).)

"We review custody and visitation orders for an abuse of discretion, and apply the substantial evidence standard to the [trial] court's factual findings.  [Citation.] A court abuses its discretion in making a child custody order if there is no reasonable basis on which it could conclude that its decision advanced the best interests of the child. [Citation.]  A court also abuses its discretion *if it applies improper criteria or makes incorrect legal assumptions*."  (*Fajota*, *supra*, 230 Cal.App.4th at p. 1497.)

B.     *The Trial Court Abused Its Discretion By Effectively Awarding Joint Physical Custody Without Requiring Hugo to Rebut the Section 3044 Presumption*

Celia contends the trial court erred by leaving the parties' 50/50 timeshare arrangement in place despite finding Hugo had committed domestic violence against her. According to Celia, section 3044 prohibited the court's 50/50 timeshare arrangement

---

[3]     Section 3044 establishes the following nonexclusive list of factors for the trial court to consider in determining whether the presumption has been overcome: "(1) Whether the perpetrator of domestic violence has demonstrated that giving sole or joint physical or legal custody of a child to the perpetrator is in the best interest of the child. . . .  [¶]  (2) Whether the perpetrator has successfully completed a batterer's treatment program that meets the criteria outlined in subdivision (c) of Section 1203.097 of the Penal Code.  [¶]  (3) Whether the perpetrator has successfully completed a program of alcohol or drug abuse counseling if the court determines that counseling is appropriate. [¶]  (4) Whether the perpetrator has successfully completed a parenting class if the court determines the class to be appropriate.  [¶]  (5) Whether the perpetrator is on probation or parole, and whether he or she has complied with the terms and conditions of probation or parole.  [¶]  (6) Whether the perpetrator is restrained by a protective order or restraining order, and whether he or she has complied with its terms and conditions.  [¶]  (7) Whether the perpetrator of domestic violence has committed any further acts of domestic violence."  (§ 3044, subd. (b).)

because it effectively awarded joint physical custody without requiring Hugo to present evidence showing the arrangement is in the children's best interest. We agree.

The trial court repeatedly acknowledged its finding that Hugo committed domestic violence against Celia invoked section 3044's rebuttable presumption and prohibited the court from awarding Hugo sole or joint custody of the children unless he presented evidence showing an award of custody to him was in the children's best interest. But Hugo did not even attempt to make that showing, and the court impliedly found he failed to do so when it acknowledged section 3044 required the court to award Celia sole legal and physical custody of the children, and it scheduled a review hearing for a year later to determine whether Hugo could present evidence to rebut section 3044's presumption based on his successful completion of a 52-week batterer intervention program.

Nonetheless, the trial court's order effectively awarded Hugo joint physical custody of the children by maintaining the existing 50/50 timeshare arrangement even though the court characterized the children's time with Hugo as "visitation." Under the Family Code, "'[j]oint physical custody' means that each of the parents shall have significant periods of physical custody." (§ 3004; see *In re Marriage of Biallas* (1998) 65 Cal.App.4th 755, 760 (*Biallas*) ["Joint physical custody exists where the child spends significant time with both parents"]; compare § 3007 ["'Sole physical custody' means that a child shall reside with and be under the supervision of one parent, subject to the power of the court to order visitation"].)

The Family Code does not define what amounts to "significant" time with each parent for identifying a joint physical custody arrangement, but case law establishes guidelines to help answer that question. (*In re Marriage of Lasich* (2002) 99 Cal.App.4th 702, 715 (*Lasich*), disapproved on other grounds by *In re Marriage of Lamusga* (2004) 32 Cal.4th 1072, 1097.) "Where children 'shuttle[] back and forth between two parents' [citation] so that they spend nearly equal times with each parent, or where the parent with

9

whom the child does not reside sees the child four or five times a week, this amounts to joint physical custody." (*Lasich*, at p. 715; see *People v. Mehaisin* (2002) 101 Cal.App.4th 958, 964; *Biallas*, *supra*, 65 Cal.App.4th at p. 760 [joint physical custody exists when children spend four days each week with one parent and three days with other parent].)

In contrast, where "a father has a child only 20 percent of the time, on alternate weekends and one or two nights a week, this amounts to sole physical custody for the mother with 'liberal visitation rights' for the father." (*Lasich*, *supra*, 99 Cal.App.4th at p. 715; *Biallas*, *supra*, 65 Cal.App.4th at p. 760 [custody one day per week and alternate weeks constitutes liberal visitation, not joint custody]; *In re Marriage of Whealon* (1997) 53 Cal.App.4th 132, 138, 142 [same].)

Here, by ordering the children to continue to evenly split their time with Celia and Hugo one week at a time, the trial court necessarily awarded Hugo joint physical custody regardless of the label the court attached to the arrangement. The court apparently believed it complied with section 3044 by awarding Celia sole legal and physical custody of the children, and describing the children's time with Hugo as "visitation." But in determining the true nature of the court's order, we must consider the legal effect of the order, not the label the court attached. (*Concerned Citizens Coalition of Stockton v. City of Stockton* (2005) 128 Cal.App.4th 70, 77.) Hugo does not explain how maintaining the previous arrangement, which provided for joint physical custody with a 50/50 timeshare, could be characterized as anything other than an award of joint physical custody. Indeed, the trial court acknowledged it was "going to leave the [previous] order the way it is."

The trial court therefore abused its discretion by failing to properly apply section 3044's rebuttable presumption and awarding Hugo joint physical custody without evidence showing that custody arrangement was in the children's best interest. (*Fajota*, *supra*, 230 Cal.App.4th at p. 1500 [after trial court found one parent had committed

10

domestic violence against another, court abused its discretion by leaving in place an earlier order that awarded both parents joint legal custody].)

We reverse the trial court's order and remand for further proceedings. On remand, the court may not award Hugo sole or joint custody because he failed to present any evidence to overcome section 3044's presumption, but the court may award Hugo visitation that does not amount to joint custody because nothing in section 3044 prevents a trial court from awarding visitation. In doing so, however, the court must comply with statutory provisions governing a visitation award in proceedings involving allegations of domestic violence. (See, e.g., § 3031, subd. (c) ["When making an order for custody or visitation in a case in which domestic violence is alleged and an emergency protective order, protective order, or other restraining order has been issued, the court shall consider whether the best interest of the child, based upon the circumstances of the case, requires that any custody or visitation arrangement shall be limited to situations in which a third person, specified by the court, is present, or whether custody or visitation shall be suspended or denied"]; § 3100.) The court also may hear a request from Hugo to modify custody subject to section 3044's presumption.

C.    *Hugo Forfeited His Challenge to the Sufficiency of the Evidence by Failing to Cross-Appeal*

The principal thrust of Hugo's brief challenges the sufficiency of the evidence to support the trial court's finding that he committed domestic violence against Celia. Hugo contends no objective evidence supported the trial court's ruling. Specifically, he argues the description of events Christian provided the police was inconsistent with the description he provided the social worker, and the court should not have considered the social worker's interview of Jayleen because she was only five years old at the time and would not speak to the social worker without Celia present. Hugo, however, did not cross-appeal from the trial court's order, and therefore forfeited this issue.

11

"As a general matter, '"a respondent who has not appealed from the judgment may not urge error on appeal."' [Citation.] 'To obtain affirmative relief by way of appeal, respondents must themselves file a notice of appeal and become cross-appellants.'" (*Preserve Poway v. City of Poway* (2016) 245 Cal.App.4th 560, 585; see *Lima v. Vouis* (2009) 174 Cal.App.4th 242, 252 [respondent who did not cross-appeal from order vacating dismissal prevented from challenging validity of order on appeal].)

Here, Celia appealed from the trial court's order and challenged the court's decision to maintain the 50/50 timeshare arrangement that existed before the domestic violence incident. She did not raise any issues about the court's finding that Hugo had committed domestic violence against her. Hugo appeared in this court solely as a respondent; he did not file his own appeal to challenge the trial court's order. The sufficiency of the evidence to support the court's domestic violence finding therefore is not before us and Hugo forfeited all challenges to that finding.

D.      *The Appeal is not Moot*

Hugo also contends Celia's appeal is moot because the one-year domestic violence restraining order the trial court issued has expired. Not so. Section 3044's presumption remains in effect for five years regardless of whether an underlying domestic violence restraining order has expired. (§ 3044, subd. (a) ["Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence . . . *within the previous five years*, there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child" (italics added)].) Moreover, it is the finding of domestic violence that triggers the presumption, not the issuance of a restraining order. (*Ibid*.) Accordingly, even though the restraining order may have expired, the trial court still may not award Hugo sole or joint legal or physical custody unless he establishes awarding him custody would be in the children's best interest.

12

## III

### DISPOSITION

The order is reversed and remanded for further proceedings as described in the last paragraph of section II.B. of this opinion.  Celia shall recover her costs on appeal.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


IKOLA, J.

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA


FOURTH APPELLATE DISTRICT


DIVISION THREE


| | |
|---|---|
| CELIA S., | G052124 |
| Appellant, | |
| | (Super. Ct. No. 13P001238) |
| v. | |
| | ORDER MODIFYING OPINION |
| HUGO H., | AND CERTIFYING OPINION FOR |
| | PUBLICATION; NO CHANGE IN |
| Respondent. | JUDGMENT |


It is ordered that the opinion filed in the above-entitled matter on August 26, 2016, is hereby MODIFIED as follows:

1. On page 2, the first sentence of the third paragraph, beginning with "Celia appeals," delete the entire sentence and replace it with the following sentence:

Celia appeals, arguing the trial court may not circumvent section 3044 by characterizing its order as merely an award of visitation.


14

2. On page 2, the fourth sentence of the third paragraph, beginning with "Based on the Family Code definition," delete the word "any" between the words "conclude" and "arrangement" and replace it with the word "an" so the sentence reads:

> Based on the Family Code definition of "joint physical custody" and the case law applying that definition, we conclude an arrangement authorizing children to spend roughly equal time with each parent is a joint physical custody arrangement.

3. On page 2, the fifth sentence of the third paragraph, beginning with "The trial court therefore abused," delete the word "that" between the words "establish" and "arrangement" and replace it with the word "the" so the sentence reads:

> The trial court therefore abused its discretion in awarding Hugo equal time with the children without requiring him to establish the arrangement was in the children's best interest.

4. On page 4, the first sentence of the first full paragraph, beginning with "The next day," delete the word "also" between the words "and" and "an" and replace it with the word "for" so the sentence reads:

> The next day, Celia filed a petition for a domestic violence restraining order against Hugo and for an order awarding her sole legal and physical custody of the children.

5. On page 4, the second sentence of the second full paragraph, beginning with "Hugo testified," delete the word "that" between the words "testified" and "he" so the sentence reads:

> Hugo testified he did not pull Celia's hair or hit her.

6. On page 4, the first sentence of the final partial full paragraph, beginning with "The trial court acknowledged" and ending on page 5, delete the word "stories" between the words "the" and "Christian" and replace it with the word "versions" so the sentence reads:

The trial court acknowledged the many conflicts between Celia's and Hugo's testimony, the inconsistencies in the versions Christian told the police and the social worker, and the impact Jayleen's age had on her ability to recollect and recount what she saw, but the court concluded Celia's version of the events "hung together better" and was "more credible."

7. On page 9, the first sentence of the first full paragraph, beginning with "The trial court repeatedly acknowledged," delete the word "invoked" between the words "Celia" and "section" and replace it with the word "triggered" so the sentence reads:

The trial court repeatedly acknowledged its finding that Hugo committed domestic violence against Celia triggered section 3044's rebuttable presumption and prohibited the court from awarding Hugo sole or joint custody of the children unless he presented evidence showing an award of custody to him was in the children's best interest.

8. On page 10, the first sentence of the second full paragraph, beginning with "Here, by ordering the children," delete the phrase "one week at a time" and replace it with the phrase "on alternating weeks" so the sentence reads:

Here, by ordering the children to continue to evenly split their time with Celia and Hugo on alternating weeks, the trial court necessarily awarded Hugo joint physical custody regardless of the label the court attached to the arrangement.

9. On page 10, the third sentence of the second full paragraph, beginning with "But in determining the true nature," insert the phrase "to it" at the end of the sentence so it reads:

But in determining the true nature of the court's order, we must consider the legal effect of the order, not the label the court attached to it.

16

These modifications do not change the judgment.

Family Violence Appellate Project and Legal Aid Society of Orange County have requested that our opinion be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.



ARONSON, J.


WE CONCUR:




MOORE, ACTING P. J.




IKOLA, J.