Filed 4/29/22 Douglas S. v. Jennifer E. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| DOUGLAS S.<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JENNIFER E.,<br><br>    Defendant and Appellant. | G058880<br><br>(Super. Ct. No. 10P001296)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nathan T. Vu, Judge.  Affirmed.

Holstrom, Block & Parke and Ronald B. Funk for Defendant and Appellant.

Hellman Law Group and Lawrence Hellmann for Plaintiff and Respondent.

# INTRODUCTION

The parties in this matter are parents to an adolescent son. Sadly, for most of his young life, they have been locked in conflict over paternity, custody, and child support for him. The record in this case is replete with evidence of not only antagonism between the parties, but outright acrimony, marring their relationship and corroding their ability to communicate, even for their own son's benefit. Indeed, it seems the child has been used by both parents as a means for inflicting pain or grief on each other.

The latest front in the parties' battle opened up in December 2015, when both sides sought modifications of custody and support orders in the judgment rendered two years prior. The dispute managed to persist over four years; the debate over whose fault that was will likely continue long into the future. Suffice it to say, when the smoke cleared, the parents were ordered to share joint legal custody and the mother was awarded a modification to her monthly child support.

During the four-year pendency of the present phase of litigation, the conflict between the parents escalated to the point where respondent was criminally charged with unlawfully placing a tracking device on appellant's car, and a domestic violence restraining order was entered against him. The biggest question we must now answer is whether this finding of domestic violence should have barred respondent from sharing custody of his child. While we find the trial court erred in its procedural application of Family Code section 3044[1] to this issue, we do not feel the error requires reversal because its judgment was well within his discretion. The child in this matter has been harmed enough by his parents' bellicosity. Depriving his father of legal custody would only harm the child further and would not be in his best interests.

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

## FACTS

Appellant Jennifer E. and respondent Douglas S. are the parents of their 12-year-old son.  The couple was never married.  Douglas' paternity was established by way of a judgment entered on February 11, 2013 when the son was nearly three years old.  The judgment gave Jennifer and Douglas joint legal custody of the son; Jennifer had physical custody while Douglas had visitation.  He also had to pay monthly child support of $1,325 to Jennifer.

On December 4, 2015, Douglas filed a request for modification (RFO) of the judgment to change his custody and visitation (Douglas' custody RFO).[2]  On December 16, 2015, Jennifer filed her own RFO to modify child support based on the child support guidelines (Jennifer's initial child support RFO).  She requested that the modification be made retroactive to the date of filing the RFO, and she also requested attorney fees.  Both RFO's were set to be heard by the family court on March 1, 2016.

On March 1, 2016, the parties entered into a stipulation, later entered by the court, to amend the 2013 judgment.  By this stipulation, the son's birth certificate would be amended to reflect Douglas as the father, and to include Douglas' last name as part of the son's last name (which heretofore had consisted solely of Jennifer's last name).  Jennifer and Douglas were to work together to ensure the paperwork to make the change was submitted to the state by March 7, 2016.  Additionally, the court cleaved Douglas' custody RFO into two parts, and laid one part to rest.  It denied the request to modify the custody order, and made some slight adjustments to the logistics surrounding custodial transfers.  But all financial issues raised in Douglas' RFO as well as Jennifer's child support RFO were continued to September 2017.  Requests for attorney fees were to be heard upon resolution of the financial issues.

---

[2]   The record for this case contains numerous RFO's.  It can be difficult to parse those which were resolved and those which remained pending, and thus, we assign each RFO a specific name for purposes of clarity.

3

The hearings on the financial issues were continued into early 2018. In the meantime, in December 2017, Jennifer filed an application for a domestic violence restraining order (DVRO) against Douglas. She claimed he had been stalking and harassing her, and had damaged her vehicle. She also discovered he had installed a global positioning system (GPS) tracking device on the bottom of her vehicle. Jennifer called police, who observed the device and took a report. A temporary restraining order against Douglas issued on December 14, 2017 pending a hearing, set for January 3, 2018. Douglas, who was self-represented by this time, sought and obtained a continuance of the hearing to March 6, 2018, which coincided with the continued hearing on the financial issues related to child support.

Judge Carol Henson of the family law court presided at the hearing on March 6, 2018. Jennifer's counsel had not been paid and was thus relieved, leaving her in propria persona. Jennifer wanted Judge Henson to continue the DVRO and rule on her request for attorney fees, which had been trailing since March 2016, so that she could hire new counsel. Jennifer accused Douglas and his counsel of utilizing stall tactics which ran up attorney fees she was unable to pay. In turn, Douglas' counsel claimed he was unable to proceed on the child support matter because Jennifer failed to provide up-to-date income and expense statements and other documentation of her financial status. Judge Henson, trying carefully and commendably to balance the concerns of both sides, ordered the DVRO and financial issues continued to April 27, 2018, and also ordered Douglas to pay $3,500 to Jennifer's new attorney for the DVRO. Regarding the financial issues, the judge ordered Jennifer to turn over her tax returns for 2017, any profit and loss or earning statements, and any other financial documents requested by Douglas seven days prior to the April hearing date. In the same timeframe, Douglas was to produce the same documents regarding income. The $3,500 awarded to Jennifer that date for attorney fees was subject to reallocation if evidence arose later indicating Jennifer's income was higher than she claimed.

4

A little over two weeks after the March 6 hearing, on March 14, 2018, Jennifer filed two new RFO's. In the first (the motion to quash), she sought attorney fees as well as orders quashing Douglas' subpoenas for her financial records, including from two of her credit card issuers. She claimed she had already provided redacted statements to Douglas' attorney, and that Douglas had not provided the required notice to consumer when seeking to subpoena her records.[3] Additionally, she alleged Douglas was only trying to get such documents in order to stalk and harass her. In the other RFO (name change RFO), Jennifer again requested attorney fees, but also orders requiring disclosure of the son's birth certificate files and for his last name to be changed back to Jennifer's last name. She claimed Douglas had changed the child's name in a way that did not conform with the court's March 2016 order, and she sought attorney fees to compensate her for having to file the RFO. Jennifer had both new RFO's calendared to be heard on the same date as the continued DVRO and financial issues hearing – April 27, 2018.

On April 2, 2018, Jennifer calendared another new RFO for the April 27 hearing date. In this application (Jennifer's custody RFO), Jennifer requested sole legal custody of the son, and sought to change Douglas' existing visitation schedule.

So far as can be determined from the record, Judge Henson addressed five of the six pending RFO's at the April 27, 2018 hearing: Douglas' RFO, Jennifer's initial child support RFO, Jennifer's custody RFO, the DVRO, and the motion to quash. The first three were continued to June 19, 2018, for an evidentiary hearing, and Judge Henson denied the motion to quash. She was "troubled by" Jennifer's "lack of cooperation" and failure to provide Douglas' lawyer with evidence of income, and she "threaten[ed] to take all of the financial matters off calendar if the court's orders [we]re not complied with." The DVRO was continued to May 14, 2018, so that witnesses could testify and records could be produced by subpoenaed parties.

---

3     The record contains proof of service of the notices to consumer, contradicting Jennifer's assertion.

Jennifer failed to heed Judge Henson's warnings. She did not turn over pay stubs and credit card statements. She claimed to have shredded pay stubs due to mold in her apartment, even though she had moved out of the mold-infested residence over a year earlier. The court by this time was of the opinion that Jennifer "actually thwarted" Douglas' counsel's attempts to obtain documentation necessary to make determinations on the financial issues, and felt her "credibility [wa]s really lacking in front of th[e] court[.]" Judge Henson took all financial matters off calendar without prejudice and told Jennifer she could refile her first child support RFO when she was willing to be "forthcoming with her information." The DVRO was continued to July 11, 2018, because criminal charges had been filed against Douglas related to the GPS tracking incident and the court did not wish to hold the hearing prior to his arraignment. The DVRO hearing had to be continued several more times while the criminal case was working its way through the initial stages.

After her initial child support RFO was taken off calendar, Jennifer filed another income and expense statement in September 2018, and attempted to raise the financial issues again. The trial court refused to restore those RFO's to the calendar, and told her she would need to file a new request in order to address them. Additionally, the trial court deemed the March 2016 stipulation dispositive of the name change RFO.

On May 28, 2019, through new counsel, Jennifer filed a new RFO for change in custody, visitation, child support and name, and attorney fees (the May 2019 RFO). The hearing for this was originally set for July 29, 2019, but then put over to October 1, 2019. The May 2019 RFO resurrected old issues – Jennifer sought child support according to the guidelines with retroactivity to the date of her initial filing, as well as sole legal custody and the previously requested change to the son's name.

With Douglas' criminal case nearing dismissal, the DVRO was finally heard by Judge Nathan Vu on August 15, 2019, continuing into September 12, 2019. The court granted the DVRO on September 12 against Douglas, prohibiting him from

6

harassing or coming within 100 feet of Jennifer, except as necessary to carry out the son's visitation orders. He was also prohibited from taking any action to obtain Jennifer's address or location. The court also implemented a supplemental order for high-conflict parents because Jennifer and Douglas were unable to amicably communicate for the son's benefit. The issue of attorney fees was reserved for the next hearing on October 1, 2019.

On October 1, 2019, the court began hearing the May 2019 RFO. Judge Vu was inclined to award sole legal custody to Jennifer by operation of the domestic violence presumption under section 3044. However, because the parties had not yet been able to develop evidence regarding rebuttal of the presumption, he continued a final ruling on legal custody to December 5, 2019. He denied Jennifer's request for retroactivity of any modification to child support to December 2015 because Judge Henson had taken the matter off calendar, and Jennifer had not filed a motion for reconsideration of this action. He denied Jennifer's request for name change, noting the court had previously considered and overruled the same objections. And he denied Jennifer's requests for attorney fees and sanctions, except that he allowed an appropriate amount in connection with the DVRO matter, $3,500. Judge Vu's findings and order after the October 1, 2019 hearing, indicated that only the issues regarding legal custody and child support were continued to December 5, 2019. The parties were to supply appropriate income and expense information to allow the court to set the amount of child support, and file briefing regarding legal custody within timeframes provided by the court.

Douglas' briefing asserted he had tried to act in a civil way toward Jennifer regarding their son's care and visitation. He also completed parenting and conflict resolution courses and said there was no evidence he had violated the DVRO since it issued. On December 5, 2019, Judge Vu awarded the parties joint legal custody, finding Douglas had rebutted the section 3044 presumption. Jennifer was awarded $2,078 in child support per month retroactive to the May 2019 RFO filing date.

7

## DISCUSSION

Jennifer's contentions on appeal are fourfold: (1) the trial court erroneously found the section 3044 presumption had been rebutted, (2) the child support modification should have been made retroactive to the filing of Jennifer's initial child support RFO (in December 2015), (3) the name change should have been granted, and (4) the trial court abused its discretion in denying Jennifer an award of attorney fees.

There is first a threshold matter to resolve. Douglas argues the appeal is untimely as to the second, third, and fourth issues above, because they were not addressed in the appealed order. We agree as to the name change and attorney fees.

""""Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from." [Citation.] We have no jurisdiction over an order not mentioned in the notice of appeal.' (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.)" (*In re J.F.* (2019) 39 Cal.App.5th 70, 75.) The notice of appeal here specifies the order being appealed is the December 16, 2019 order, not the order issued in November 2019.

Additionally, we are unconvinced it was even possible for Jennifer to challenge the November 2019 order. A postjudgment order is only appealable if it "is not preliminary to later proceedings, and will not become subject to appeal after some future judgment." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 656.)

As the above procedural summary makes clear, the only issues reserved for the December 5, 2019 hearing, were legal custody and the calculation of the modification to child support. The court's October 1 minute order clearly denied the name change request and attorney fee requests outside of the amount Judge Henson had granted for the successful DVRO. The court's findings and order filed November 7, 2019, also made clear it was denying these requests and there would be no further proceedings on these

8

issues. Jennifer thus had 60 days from November 7, 2019, to appeal the name change and attorney fee rulings. The appeal in this matter was not filed until February 18, 2020.[4]

Jennifer argues that her appeal from the December 2019 order, encompasses all issues, including attorney fees and the name change, but the record of the hearing refutes this. Jennifer's counsel attempted to raise the fee issue in December and was quickly shut down by Judge Vu, who stated he had already ruled on the matter and would hear no more argument on it. Jennifer had sufficient notice at this point that the issues ruled upon in the November 7 findings and order had been adjudicated. That was the time for an appeal. As for the name change, Jennifer's counsel himself acknowledged on the record that the court had only reserved the child support and legal custody issues for the December hearing. There was nothing further to do regarding the name change or the attorney fee issues.

We must disagree with Douglas' procedural argument on retroactivity, however. Because the final child support modification was reserved for the December hearing, the court's ruling on retroactivity in October was preliminary and not appealable. The October ruling merely impacted the scope of what the court would eventually decide in December. As such, Jennifer's appeal of the retroactivity issue was timely.

We now proceed to review the issues regarding legal custody and retroactivity of child support.

## I.  Section 3044 Presumption

"We review custody and visitation orders for an abuse of discretion, and apply the substantial evidence standard to the trial court's factual findings. (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 662.) On issues of statutory interpretation, however, review is de novo." (*Jaime G. v. H.L.* (2018) 25 Cal.App.5th 794. 805.)

---

[4]    We also note Jennifer's name change RFO sought to hyphenate the son's last name, but the parties March 1, 2016 stipulation contained no hyphen. Thus, to the extent Jennifer disagreed with the stipulated name, her time to appeal said stipulation expired long ago also.

Section 3044 states in pertinent part as follows: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child, pursuant to Sections 3011 and 3020. This presumption may only be rebutted by a preponderance of the evidence." (§ 3044, subd. (a).)

There are two steps required to overcome the presumption. (§ 3044, subd. (b).) First, the parent who has perpetrated domestic violence must demonstrate that it "is in the best interest of the child pursuant to Sections 3011 and 3020" for him to have sole or shared custody. (*Id.*, subd. (b)(1).) Second, the court must consider certain enumerated factors and determine whether they weigh in favor of the perpetrator in terms of protecting the child's health, safety, and welfare. (*Id.*, subd. (b)(2).) The trial court must "make specific findings on each of the factors in subdivision (b)." (*Id.*, subd. (f)(1).) "If the court determines that the presumption . . . has been overcome, the court shall state its reasons in writing or on the record as to why" the two-step requirement has been met. (*Id.* at subd. (f)(2).)

Jennifer contends the trial court failed to make specific findings on the factors in subdivision (b). This is only partially true. The trial court's findings and order after the December 2019 hearing said: "In awarding the parties joint legal custody of their minor child, the court finds and orders that the petitioner has successfully rebutted the presumption contained in Family Code section 3044 by a preponderance of the evidence and that the award of joint legal custody is in the child's best interests." There were no specific written findings. But at the December 5, 2019 hearing, the trial court stated it was "inclined to find that [Douglas] has by a preponderance of the evidence overcome the presumption under . . . section 3044 and that the parties ought to have joint legal custody . . . for the reasons stated in Douglas' declaration and his memorandum of

10

points and authorities." The declaration and brief Douglas filed prior to the December 5 hearing contained a listing of the factors in subdivision (b)(2) along with a statement regarding the applicability of each. Therefore, while the court did not make its own specific findings in the minute order of the hearing, it effectively adopted Douglas' analysis as its own.

There was sufficient evidence in the record to support the trial court's conclusion that the presumption had been rebutted as stated in Douglas' declaration. (*S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 340-341.) The temporary restraining order initially granted in December 2017 prohibited Douglas from contacting Jennifer except concerning custody and visitation, and also required he stay at least 100 feet away from her vehicle. Douglas was permitted to do curbside pickups of the child at Jennifer's residence on non-school days. But he was not permitted to install any more tracking devices on her vehicle. After full hearing, the DVRO was ultimately granted based on a single act: installing the tracking device.

Douglas' declaration prior to the December 5 hearing stated he had completed two parenting classes and had attempted to communicate amicably with Jennifer in parenting and visitation issues. While Jennifer claimed Douglas had violated the DVRO several times by showing up at her house on non-custodial days or discerning her address or location, the court felt the evidence reflected communications and interactions regarding visitation. And based on our review of this evidence, we cannot take issue with the court's conclusion. The communications and interactions at issue appear to be permitted under the temporary restraining order and DVRO and not to constitute violations. Jennifer had no evidence whatsoever that Douglas had attempted to put a tracking device on her vehicle again, surveil her or monitor her whereabouts, or that he intentionally violated the restraining order. Moreover, by all accounts, Douglas was engaged in fathering the son – utilizing his visitation, taking the child on trips, and going

11

to his athletic events. As such, there is substantial evidence rebutting the presumption as required under section 3044. We will not disturb the joint legal custody award.

**II.**         **Retroactivity of Child Support**

"An order modifying or terminating a support order may be made retroactive to the date of the filing of the notice of motion or order to show cause to modify or terminate, or to any subsequent date[.]" (§ 3653, subd. (a).) "When the order is based on a party's unemployment or certain type of military activation, the order 'shall be' made retroactive, unless there is 'good cause' to deny retroactivity. (§ 3653, subds.(b), (c).) When the modification is based on other reasons, as is the case here, whether to order retroactivity is a matter within the trial court's sound discretion. (See § 3653, subd. (a).) In exercising its discretion, the trial court's analysis must focus on the child's needs, which is dependent on the parent' ability to provide support." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1052.)

Jennifer contends Judge Vu failed to take the son's needs into account in denying retroactivity. Based on the record, we see the situation very differently. Judge Vu acted completely within his discretion, and indeed his *jurisdiction*, to deny retroactivity to any time period beyond the filing of the May 2019 RFO. The statute only allowed him to make the modification retroactive to the date of filing of the RFO he was then considering – not an RFO filed in December 2015 and then taken off calendar by another judge. Judge Vu correctly observed that Jennifer had not filed a motion for reconsideration of Judge Henson's May 2018 ruling taking financial matters off calendar. And one and a half years after the fact, he was without authority to reconsider that ruling. (See Code Civ. Proc., § 1008, subd. (e).)

Moreover, Judge Vu noted Jennifer's initial child support RFO had not been resolved in 2018 because she had failed to be transparent about her income. And, contrary to Jennifer's argument, her willingness to be transparent is directly tied into her child's needs. Such transparency would allow the court to understand what amount of

12

child support would be reasonable and necessary for the son's care in light of Jennifer's financial means.  If she failed to give the court insight into her financial means, this evaluation could not be made.  We therefore uphold the trial court's decision to deny retroactivity to the date of filing of Jennifer's initial child support RFO.

### DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.

BEDSWORTH, ACTING P. J.

WE CONCUR:

MOORE, J.

ZELON, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13

MOORE, J., Concurring.

I concur with everything in the majority opinion.  I write separately to express my concern for the child who is growing up in a toxic setting created by his parents.  I want to remind the trial court that should the circumstances warrant it, the court may refer the case to the relevant social service agency for a possible dependency petition.  (See *Guardianship of Simpson* (1998) 67 Cal.App.4th 914.)

MOORE, J.