Filed 5/23/24  L.G. v. S.M. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| L.G.,<br><br>    Respondent,<br><br>    v.<br><br>S.M.,<br>        Appellant. | B326493<br><br>(Los Angeles County<br>Super. Ct. No. 22VEPT00173) |

APPEAL from the order of the Superior Court of Los Angeles County, Marilyn M. Mordetzky, Commissioner. Affirmed.

S.M., in pro. per., for Appellant.

No appearance for Respondent.

Appellant S.M. appeals from the domestic violence restraining order (DVRO) and custody order issued against him at the request of respondent L.G. following an evidentiary hearing. He contends substantial evidence did not support the family court's finding of abuse under the Domestic Violence Prevention Act (DVPA), Family Code, section 6200 et seq.,[1] and the family court erred in awarding physical and legal custody of minor son to L.G. We affirm.

## BACKGROUND

### A. Factual Background

L.G. presented evidence of the following material facts at the evidentiary hearing through witness testimony and her declaration. S.M. and L.G. lived together with son[2] between 2011 and 2014, and their relationship continued "on and off" until 2017. S.M. sometimes slapped and shoved L.G. When the relationship ended, so did the physical violence, but S.M.'s verbal and emotional abuse continued. When S.M. became angry, he threatened to keep son away from L.G.

The parties' dispute escalated during the summer of 2022, when son was eleven years old. L.G. became concerned about S.M.'s lack of consistency in seeing son and son's report that S.M. had asked son to move to Texas with him, with promises of his own room, basketball, and "gadgets" if he did so. In late July,

---

[1]     Unless otherwise specified, all statutory references in this opinion are to the Family Code.

[2]     L.G. stated in her declaration that she and S.M. are the parents of son. However, in July 2022, she filed a petition to determine parental relationship.

2

L.G. filed requests for orders establishing paternity and for support and custody.

Around the same time, L.G. informed S.M. that she was seeking a custody order. S.M. became angry and told L.G. that if she went to court, he would keep son away from her. The same day, he went to L.G.'s home and repeated his intention to take son and not give him back.

On August 16, 2022, S.M. picked up son from school, even though son said he was waiting for his mother. S.M. did not tell L.G. he would be picking up son and drove son away in a car he did not own. Son had been speaking with L.G. on his cell phone, but the call disconnected abruptly as son was describing his location. For the next few hours, L.G.'s calls to son's phone went unanswered, and L.G. was unable to locate the phone using a locator application. In the early evening, son called L.G. but said he could not disclose his location or S.M. would turn his phone off again. L.G. believed S.M. had kidnapped son.

L.G. went to S.M.'s home to retrieve son. L.G. saw S.M. with son in a car she did not recognize. When S.M. stopped the car and got out, L.G. leaned her head inside the open passenger-side window and unsuccessfully attempted to unlock the door from the inside so son could exit. S.M. drove away with son while L.G.'s head was still inside the vehicle.

On September 2, 2022, S.M. texted L.G. while she was at work, and she called him back. S.M. was angry that he had been served with the family court filings. S.M. demanded that L.G. dismiss the proceedings. S.M. said he was "going to go for the kill," that he was "going to take [L.G.'s] livelihood," and this "is not a threat, this is a promise." The call left L.G. "panicking and shaking," and her work supervisor, who had listened to part of

the conversation, described L.G. as "visibly very upset, crying." Fearing what S.M. might do to her and son, L.G. filed a police report.

S.M. presented his case through his declaration and testimony, in which he attested to the following facts. S.M. never threatened L.G., and the relationship was not abusive. He never "demonstrated any act of anger" with L.G. or son. S.M. initially declared he "never threaten[ed] to take [his] son and move to Texas," but at the hearing, admitted he asked son, "If I move to Texas, would you move with me?"

S.M. admitted he picked up son up from school on August 16. He deliberately did not notify L.G. he was doing so, even though he knew custody was in dispute. S.M. did not turn off son's phone, and he contended a lack of cellular service caused the missed calls. Once service resumed, S.M. told L.G. he would be keeping son until the following Monday.

S.M. stated that when L.G. arrived at S.M.'s complex, she "jump[ed] in the front passenger window" to unlock the door, and when she could not, grabbed son's arm and tried to pull him out. S.M. contended he drove away after L.G. withdrew her head from the window. S.M. took son to a police station and notified L.G. of their location. When L.G. arrived, officers told her S.M. had done nothing wrong, and S.M. departed with son.

S.M. said that on September 2, S.M. told L.G., "[G]oing [ ]to court will affect our livelihood." He did not threaten L.G., and he asked respondent if she wanted to "work things out amongst ourselves and co[-]parent" instead of "going to court, to avoid the stress and time which in turn would not put us in a good place for our livelihood."

4

## B. Procedural Background

A week later, L.G. filed a request for a DVRO, alleging that S.M.'s conduct and statements in the past three months disturbed her peace. She requested the DVRO protect both her and son. She requested legal and physical custody of son and restrictions on S.M.'s visitation.

The family court conducted an evidentiary hearing, during which it admitted the parties' declarations into evidence and heard testimony from S.M., L.G., and several witnesses called by L.G. At the conclusion of the hearing, the court issued the DVRO and custody order.

At the end of the hearing, the family court recited provisions from section 6320 and the statutory definitions for disturbing the peace of the other party. The court found that, in July 2022, S.M. was on notice of custody and visitation issues. There was no agreed-on custody or visitation schedule, and S.M.'s parental relationship had not been established. S.M. did not notify L.G. he was going to pick up son from school on August 16. Because S.M. had no right to pick up son, the court found, S.M.'s doing so "bec[ame] a question of control."

The family court found it "hard to believe" that lack of service rendered son's phone unreachable for three hours. When L.G. went to S.M.'s home, S.M. did not ask himself whether he should stop the car, let son out, and deal with the dispute in court. S.M.'s refusal to do so reflected his continuing to exert control. Further, S.M. backed up the car when L.G. was trying to extract son.

S.M.'s exertion of control continued in the parties' early September conversation, when S.M. told L.G. that, if she continued with the court proceedings, "'I promise to take your

5

livelihood.'"  The court found that the totality of the circumstances established that S.M. disturbed L.G.'s peace.

The DVRO listed L.G. and son as protected people, and included no-abuse, no-contact, and stay-away orders.  The court declined to order S.M. to a batterer intervention program.  Legal and physical custody of son were awarded to L.G.  S.M. would have unmonitored day visits, with pick-ups and drop-offs at a police station.  S.M. did not object to this arrangement when it was announced at the hearing.  S.M. was forbidden from travelling with son outside of Los Angeles County.

## DISCUSSION

S.M. contends the family court erred in issuing the DVRO because of a "lack of substantial evidence supporting claims of abusive behavior or a credible threat," and he challenges the award of custody of son to L.G.[3]

## A.    Legal Standards

"Under the DVPA, the trial court may issue an order 'to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved' upon 'reasonable proof of a past act or acts of abuse.'"  (*Nevarez v. Tonna* (2014) 227 Cal.App.4th 774, 782, quoting Fam. Code § 6300.)  "[A]buse" within the meaning of the DVPA "is not limited to the actual infliction of physical injury or assault" (§ 6203, subd. (b)), and the definition includes, "To

---

[3]    S.M. also challenges a purported order directing him to participate in a batterer's program.  However, the DVRO included no such order, so we do not address this claim of error.

6

engage in any behavior that has been or could be enjoined pursuant to Section 6320." (§ 6203, subd. (a)(4).)

Behavior that may be enjoined pursuant to section 6320 includes threatening, harassing, and "disturbing the peace of the other party." (§ 6320, subd. (a).) "[D]isturbing the peace of the other party' refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party . . . by any method or through any means." (§ 6320, subd. (c).) Examples of peace-disturbing conduct include "coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty." (*Ibid.*) Examples include "[c]ompelling the other party by . . . intimidation . . . to abstain from conduct in which the other party has a right to engage." (*Ibid.*)

"The DVPA vests the court with discretion to issue a restraining order 'simply on the basis of an affidavit showing past abuse.' [Citation.] The burden of proof is by a preponderance of the evidence. [Citations.] The DVPA 'confer[s] a discretion designed to be exercised liberally, at least more liberally than a trial court's discretion to restrain civil harassment generally.'" (*Curcio v. Pels* (2020), 47 Cal.App.5th 1, 11 (*Curcio*).)

"We review the grant of a DVPA restraining order for abuse of discretion, and, to the extent we are called upon to review the court's factual findings, we apply the substantial evidence standard of review. [Citation.] In reviewing the evidence, we examine the entire record to determine whether there is any substantial evidence—contradicted or uncontradicted—to support the trial court's findings. [Citation.] We must accept as true all evidence supporting the trial court's findings, resolving every conflict in favor of the judgment. [Citation.] We do not

7

determine credibility or reweigh the evidence.  [Citation.]  If substantial evidence supports the judgment, reversal is not warranted even if facts exist that would support a contrary finding." (*Curcio*, *supra*, 47 Cal.App.5th at p. 11.)

**B.      S.M. Forfeited His Challenge to the Sufficiency of the Evidence Supporting the DVRO**

"""A party who challenges the sufficiency of the evidence to support a particular finding must *summarize the evidence* on that point, *favorable and unfavorable*, and *show how and why it is insufficient*.  [Citation.]'  [Citation.]  '[W]hen an appellant urges the insufficiency of the evidence to support the findings it is his duty to set forth a fair and adequate statement of the evidence which is claimed to be insufficient.  He cannot shift this burden onto respondent, nor is a reviewing court required to undertake an independent examination of the record when appellant has shirked his responsibility in this respect.'" [Citation.]'" (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 512 (*Ashby*), quoting *In re Marriage of Marshall* (2018) 23 Cal.App.5th 477, 487, italics in original.)  Thus, when the party against whom a DVRO was issued "significantly downplay[s] the seriousness of his actions and recit[es] only favorable evidence," the reviewing court may find that party "forfeited his sufficiency of the evidence claim." (*Ashby, supra*, 68 Cal.App.5th at p. 509.)

S.M. has not summarized the evidence, favorable and unfavorable, that the family court considered when deciding the DVRO.  In his opening brief, S.M provides a short "Statement of Fact" without any citations to the record.[4]  He discusses his role

---

[4]      "It is incumbent upon the parties to an appeal to cite the particular portion of the record supporting each assertion made.  It

8

as a father and asserts L.G. does not want to co-parent and body shames son. He makes only a brief reference to the August 16 incident, placing blame on L.G. He does not discuss the family court's findings that S.M.'s communications and actions in July, August, and September disturbed L.G.'s peace. The balance of S.M.'s brief consists largely of his denying he perpetrated or threatened *physical* abuse, and he downplays the gravity and effect of his verbal threats and conduct.

Because S.M. provides only a favorable version of events, does not cite to any evidence in the record, and downplays his actions, he has forfeited his sufficiency of the evidence claim. (*Ashby, supra*, 68 Cal.App.5th at p. 509.)

## C.     The DVRO Was Supported by Substantial Evidence

Even if S.M. had not forfeited his claim of error, we would affirm the DVRO. Substantial evidence supported the family court's findings that S.M. used threats and emotional abuse in an attempt to dissuade L.G. from pursuing relief in court, thereby disturbing her peace.

S.M. threatened L.G. with the loss of her child if she did not dismiss the court proceedings. A few weeks later, he made good on that threat by physically removing son from his school without notifying L.G., driving son away in an unfamiliar car, obscuring son's whereabouts for hours, and causing L.G. to fear her son had been kidnapped. Once L.G. located son, S.M. still refused to return him, even going so far as to drive away while L.G. was trying to free son from S.M.'s vehicle.

---

should be apparent that a reviewing court has no duty to search through the record to find evidence in support of a party's position." (*Williams v. Williams* (1971) 14 Cal.App.3d 560, 565.)

9

Afterwards, S.M. expressed no remorse, but instead, augmented his threat with a promise to take L.G.'s livelihood unless she dismissed the court proceedings. That threat left L.G. panicking and upset. We conclude the trial court did not abuse its discretion by issuing the DVRO.

## D. S.M. Has Forfeited His Claim of Error Arising from the Custody Order

The family court awarded sole legal and physical custody of son to L.G. S.M. challenges this order, contending that shared custody serves son's best interests.

When deciding a petition for a DVRO, "the court has broad discretion also to 'make an order for the custody of a child . . . that seems necessary or proper.'" (*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 661 (*Celia S.*), quoting § 3022.) "The guiding principle for the court in making any custody or visitation order is that the order must be in the child's best interest." (*Id.* at p. 661, citing §§ 3011, 3020, 3040.)

"[S]ection 3044 establishes a rebuttable presumption that awarding physical or legal custody to a parent who has committed domestic violence is detrimental to a child's best interest." (*Celia S., supra,* 3 Cal.App.5th at p. 661.) Subdivision (a) of section 3044 provides, in pertinent part: "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . , there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . . This presumption may only be rebutted by a

10

preponderance of the evidence." "'This presumption is mandatory and the trial court has no discretion in deciding whether to apply it: "[T]he court *must* apply the presumption in any situation in which a finding of domestic violence has been made."'" (*City and County of San Francisco v. H.H.* (2022) 76 Cal.App.5th 531, 541, citation omitted, italics in original.)

The section 3044 presumption "changes the burden of persuasion, but 'may be overcome by a preponderance of the evidence showing that it is in the child's best interest to grant joint or sole custody to the offending parent.'" (*Christina L. v. Chauncey B.* (2014) 229 Cal.App.4th 731, 736, quoting *Keith R. v. Superior Court* (2009) 174 Cal.App.4th 1047, 1055; § 3044, subd. (a).) Thus, it was S.M.'s burden below to establish, by a preponderance of the evidence, that joint custody was in son's best interest. Whether a party has overcome a rebuttable presumption is "a question for the trier of fact, whose decision will not be reversed on appeal if supported by substantial evidence." (*Weil v. Weil* (1951) 37 Cal.2d 770, 788.)

The family court acknowledged that issuing the DVRO would trigger the section 3044 presumption, and S.M. would have to overcome it to obtain custody of son. Because S.M. requested custody, we may infer from the award of sole custody to L.G. that the court concluded that S.M. failed to carry his burden of overcoming the section 3044 presumption.[5]

In contesting the trial court's custody order, S.M. has failed to adequately brief his claim of error and provide citations to the

---

[5]     A written or on-the-record statement of reasons is required "[i]f the court determines that the presumption in subdivision (a) has been overcome . . . ." (§ 3044, subd. (f)(2).) The statute does not require such a statement when the presumption has *not* been overcome.

11

record. "'The absence of cogent legal argument or citation to authority allows [a reviewing] court to treat the contentions [of error] as' forfeited." (*In re Marriage of Carlisle* (2021) 60 Cal.App.5th 244, 255, citation omitted.) Further, forfeiture may be found when the appellant "fail[s] to support the factual assertions in its legal argument with citations to the evidence . . . ." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 895; see *id.* at p. 894 ["Rather than scour the record unguided, we may decide that the appellant has forfeited a point urged on appeal when it is not supported by accurate citations to the record."].)

Other than acknowledging the section 3044 presumption exists, S.M. has not cited to any evidence in the record he contends satisfied his burden of establishing that shared custody was in son's best interest. S.M. also fails to make any cogent legal argument concerning why the family court erred in awarding legal and physical custody of son to L.G., and the only "precedent" he offers is an incomplete citation to "*Johnson v. Smith* (Citation)."[6] We conclude appellant has forfeited his claim that sole custody was granted to L.G. in error.[7]

---

[6] Later in the brief, S.M. cites to "the judicial pronouncement of *Doe v. Roe* (Citation) . . . ."

[7] Had S.M. not forfeited his claim of error, we would have affirmed the custody order in any event, as S.M. has not cited to evidence in the record to satisfy his burden of overcoming the section 3044 presumption.

## DISPOSITION

The order is affirmed.


                                    MORI, J.


We concur:



    COLLINS, P. J.



    ZUKIN, J.