Filed 6/7/22  Campos v. Los Angeles Unified School Dist. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICOLE CAMPOS,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LOS ANGELES UNIFIED SCHOOL DISTRICT,<br><br>Defendant and Appellant. | B309359<br><br>(Los Angeles County<br>Super. Ct. No. 20STCV07550) |

APPEAL from an order of the Superior Court of Los Angeles County, Fernando L. Aenlle-Rocha, Judge.  Affirmed.

Anthony J. Bejarano; Hurrell Cantrall, Thomas C. Hurrell and Melinda Cantrall for Defendant and Appellant.

Wyatt Law and Andrew M. Wyatt for Plaintiff and Respondent.

This case arises out of the alleged constructive termination of plaintiff Nicole Campos (plaintiff) by defendant Los Angeles Unified School District (LAUSD).  Plaintiff alleges that because of her age and disability, and in retaliation for her complaints to the Equal Employment Opportunity Commission (EEOC), LAUSD engaged in a course of conduct that collectively created intolerable working conditions.

LAUSD filed a special motion to strike under the anti-SLAPP statute, Code of Civil Procedure[1] section 425.16.  LAUSD asserted that each of plaintiff's causes of action was based in significant part on conduct protected under the anti-SLAPP statute, and plaintiff could not demonstrate that any cause of action had arguable merit.  LAUSD therefore contended that the complaint should be stricken in full.  The trial court struck the allegations of protected conduct, but otherwise denied the special motion to strike.

We affirm.  In two recent decisions, our Supreme Court has held that where a plaintiff alleges a "mixed" cause of action—i.e., a cause of action that combines allegations of activity protected by the anti-SLAPP statute with allegations of unprotected activity—the plaintiff must demonstrate arguable merit only as to the protected conduct.  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995 (*Bonni*); *Baral v. Schnitt* (2016) 1 Cal.5th 376 (*Baral*).)  Accordingly, because LAUSD contended that only some of the alleged misconduct was protected under the anti-SLAPP statute, the trial court properly granted in part and denied in part the anti-SLAPP motion.

---

[1]    All subsequent undesignated statutory references are to the Code of Civil Procedure.

2

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Complaint.

Plaintiff is an elementary school teacher who was employed by LAUSD between 2004 and 2018.  In February 2020, she filed a complaint against LAUSD, which alleged as follows:

Plaintiff taught kindergarten and second grade at 75th Street Elementary School from October 2008 until June 2013.  While at 75th Street, plaintiff reported that the school's principal physically manhandled a student.  The principal subsequently made negative comments about plaintiff and threatened to accuse her of harassment.

From June 2013 to October 2015, plaintiff worked as a substitute teacher at multiple schools in South Los Angeles.  During this time, she was falsely accused by a teacher's aide of being insensitive to a student.  Plaintiff asked to see the aide's written complaint, but it was never produced.

During the 2016–2017 school year, plaintiff was assigned to a classroom with an excessive number of students with behavioral issues.  One student kicked and threw a chair at plaintiff, injuring her.  Plaintiff contacted the EEOC to report discrimination based on temporary disability and age, but she did not receive a timely response.

In 2017, plaintiff was told she would be working with a teacher who previously had bullied her.  That teacher subsequently physically threatened and retaliated against plaintiff after plaintiff urged the teacher to more carefully supervise her students.

In August 2018, the school's principal required plaintiff to work with a teacher who intimidated and physically mishandled students, causing plaintiff extreme stress and mental anxiety.

3

Plaintiff asked to have that teacher removed from her classroom, but the principal refused and failed to investigate the teacher's behavior. In September 2018, plaintiff was visited by school police after she was falsely accused of slapping a student and invading another teacher's personal space. On October 8, 2018, that teacher prevented plaintiff from supervising her students and called plaintiff a "bitch," and a student injured plaintiff by pushing a gate onto her toe. That day, plaintiff's doctor placed her on stress leave.

Plaintiff alleges that she was constructively terminated on October 8, 2018 as a result of the "the relentless investigation and extreme 'micro-managing' of [plaintiff's] activities and classroom performance," as well as of the bad-faith failures of various LAUSD employees to investigate plaintiff's claims of wrongdoing by other teachers and administrators. "In other words, LAUSD's 'investigation,' abusive oversight and incessant micro-managing of [plaintiff] was a total sham, and its goal was not to address legitimate concerns regarding [plaintiff's] classroom performance and legitimate claims she made of others' misconduct and her own discriminatory treatment, but rather to look for reasons to diminish and eventually destroy any chance [plaintiff] had to succeed in her classroom duties." Further, LAUSD teachers and administrators made "deliberately false and defamatory accusations of severe misconduct by [plaintiff] (i.e., misconduct or abusive conduct toward her students) thereby carrying out their discriminatory and retaliatory motives." Finally, LAUSD provided the EEOC with letters written by parents that cast plaintiff in a negative light, but did not provide plaintiff with copies.

4

Plaintiff alleged that these facts gave rise to seven causes of action: retaliation, age discrimination, and disability discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) (first, second, and third causes of action); failure to provide reasonable accommodation in violation of FEHA (fourth cause of action); constructive termination and discrimination in violation of public policy (fifth and sixth causes of action); and breach of the implied agreement not to terminate without good cause (seventh cause of action).

## B. LAUSD's Special Motion to Strike.

LAUSD filed a special motion to strike the complaint pursuant to the anti-SLAPP statute. LAUSD urged that all of plaintiff's causes of action were based on two allegations subject to the anti-SLAPP statute: that LAUSD submitted documents, including parent and student complaints about plaintiff, to the EEOC; and LAUSD teachers and administrators defamed plaintiff by reporting that she acted abusively towards students and co-workers. LAUSD further contended that plaintiff could not demonstrate a probability of prevailing on any of her causes of action because LAUSD's responses and communications to the EEOC were privileged as a matter of law, plaintiff could not establish a prima facie case that she was subjected to any adverse employment action for an improper reason, and LAUSD was immune from common law causes of action pursuant to the Government Claims Act.

Plaintiff opposed the special motion to strike. She contended that none of her claims arose out of protected activity; instead, her complaint alleged that LAUSD, through its employees and agents, harassed and abused her in a variety of

5

ways and acted in bad faith by failing to properly investigate her claims of wrongdoing by other LAUSD employees. Although plaintiff acknowledged that the parents' letters sent to the EEOC after she went out on leave might be protected activity, she urged those allegations were not the gravamen of her complaint. Finally, she contended that all of her causes of action were meritorious.

On September 28, 2020, the trial court struck from the complaint plaintiff's claims that LAUSD representatives provided parent letters about plaintiff to the EEOC, and that plaintiff's co-workers defamed her by reporting that she abused students and co-workers. The court otherwise denied the motion. It explained that the stricken allegations constituted protected activity subject to the anti-SLAPP statute, and plaintiff had failed to present any evidence that, if accepted by a trier of fact, would give rise to liability. These allegations thus were properly stricken from the complaint. However, because the allegations of protected conduct were not essential to any of plaintiff's causes of action—that is, plaintiff's allegations of discriminatory and retaliatory termination were not "dependent upon or enmeshed with the conduct identified by defendant LAUSD"—the court declined to entirely strike any cause of action alleged in the complaint. The court also denied LAUSD's request for attorney fees.

LAUSD timely appealed from the September 28, 2020 order.

## DISCUSSION

LAUSD contends that the trial court erred by denying the special motion to strike. It urges that the acts stricken by the trial court were essential elements of each of plaintiff's seven causes of action, and thus the motion to strike should have been

6

granted in full. Separately, it urges that the trial court erred by denying its request for attorney fees.

Plaintiff contends that the trial court erred by striking the allegations that LAUSD employees defamed her and provided the EEOC with letters written by parents that cast her in a negative light. She urges, however, that the court otherwise properly denied the anti-SLAPP statute.[2]

Plaintiff did not cross-appeal from the anti-SLAPP order, and therefore we will not consider her contention that the trial court erred by striking the allegations that LAUSD representatives improperly submitted documents to the EEOC or that plaintiff's co-workers defamed her. (E.g., *Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665 [" 'As a general matter, " 'a respondent who has not appealed from the judgment may not urge error on appeal.' " [Citation.] "To obtain affirmative relief by way of appeal, respondents must themselves file a notice of appeal and become cross-appellants" ' "]; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2021)

---

[2] LAUSD contends that plaintiff's appellate brief is so deficient that we should disregard it. Although we acknowledge serious deficiencies in plaintiff's brief—including plaintiff's reliance on an appellate decision reversed by the California Supreme Court more than five years ago—we decline to strike it. It is the appellant's burden to overcome the presumption of correctness by demonstrating error on appeal, regardless of whether the respondent has submitted argument in support of the appealed judgment or order, and thus the adequacies of the respondent's brief are not material to our decision. (See, e.g., *Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 226–227 [appellant bears the burden to affirmatively demonstrate error, even if respondent did not file an appellate brief].)

¶ 8:195, italics omitted ["[A]s a general rule, respondents who fail to file a cross-appeal cannot claim error in connection with the opposing party's appeal"]; *Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1121 [same].) As to LAUSD's claims, as we discuss more fully below, we conclude that the trial court properly denied the anti-SLAPP motion in significant part.

## I. Legal principles.

### A. The anti-SLAPP statute.

"Enacted by the Legislature in 1992, the anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern. (See § 425.16, subd. (a); *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619; *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.)" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884 (*Wilson*).) To that end, section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by

8

law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

The analysis of an anti-SLAPP motion involves two steps. "Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) For purposes of the anti-SLAPP statute, a claim arises from protected activity "when that activity underlies or forms the basis for the claim. (*Id.* at p. 1062.) In other words, " '[t]he only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e).' " (*Id.* at p. 1063.) In ruling on an anti-SLAPP motion, therefore, "courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Ibid.*)

If the defendant carries its burden to demonstrate that plaintiff's claims arise from protected activity, the plaintiff must then demonstrate its claims have at least " 'minimal

9

merit.' " (*Wilson, supra,* 7 Cal.5th at p. 884.)  If the plaintiff fails to meet that burden, the court will strike the claim.  (*Ibid.*)  We independently review the grant or denial of an anti-SLAPP motion.  (*Park, supra,* 2 Cal.5th at p. 1067.)

### B.    "Mixed" causes of action.

The California Supreme Court has twice considered how a special motion to strike operates in the context of a so-called "mixed" cause of action, which combines allegations of protected and unprotected activity in a single cause of action.  In *Baral, supra,* 1 Cal.5th 376, 381, the court considered four causes of action alleged to arise in part from an accounting audit.  The defendant filed an anti-SLAPP motion, seeking to strike all the references to the audit, and the trial court denied the motion, concluding that anti-SLAPP relief was not available because no cause of action enumerated in the operative complaint would be eliminated if the allegations of protected activity were stricken.  (*Id.* at p. 384.)  The Court of Appeal affirmed.  (*Ibid.*)

The Supreme Court reversed.  It noted that a single pleaded cause of action may be supported by many distinct allegations of conduct by the defendant, each of which would support a claim for recovery.  If the supporting allegations include conduct furthering the defendant's exercise of the constitutional rights of free speech or petition, the pleaded cause of action "aris[es] from" protected activity, at least in part, and is subject to a special motion to strike.  However, if a cause of action alleges a right to relief based on both protected and unprotected conduct, a court should consider the merit of only the allegations arising out of the protected activity. (*Baral, supra,* 1 Cal.5th at p. 395.)

10

The court concluded that courts should use the following approach when considering a mixed cause of action: "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral, supra,* 1 Cal.5th at p. 396.)

The Supreme Court again considered a "mixed" cause of action in the context of a special motion to strike in *Bonni, supra,* 11 Cal.5th 995. There, a surgeon sued two hospitals for retaliation after they terminated his medical staff privileges, allegedly in retaliation for his raising patient safety concerns. The hospitals brought a special motion to strike the retaliation claim, urging that the surgeon's claim arose from the peer review process and thus necessarily targeted protected speech or petitioning activity. (*Id.* at p. 1004.) The trial court granted the motion, concluding that the "gravamen" of the claim was based on protected peer review activities. (*Id.* at p. 1007.)

11

The Supreme Court reversed in part, finding that while some of the forms of retaliation alleged in the complaint qualified as protected activity, the discipline imposed through the peer review process did not. (*Bonni, supra,* 11 Cal.5th at p. 1004.) Thus, while the hospitals could seek to strike some of the surgeon's retaliation claims, it was not entitled to wholesale dismissal of those claims under the anti-SLAPP statute. (*Ibid.*) The court further noted that while the hospital sought to strike the single cause of action for retaliation, that cause of action alleged at least 19 distinct acts. (*Id.* at p. 1009.) Some of those acts—including allegedly defamatory statements made during the peer review process and reporting the surgeon's summary suspensions to the California Medical Board—were either "quintessential speech activities" or statements made in connection with an issue under consideration in an official proceeding, and thus were protected activities within the meaning of the anti-SLAPP statute. (*Id.* at pp. 1016–1017.) Accordingly, they were subject to dismissal unless the surgeon could demonstrate "at least some 'minimal merit' to the claims." (*Id.* at p. 1019.) The remaining claims, however—including for retaliation by suspending and terminating the surgeon's medical staff privileges, creating a hostile work environment, and misusing the surgeon's private health information—did not allege protected activity and thus were not subject to dismissal under the anti-SLAPP statute. (*Id.* at pp. 1020–1024.)

With the principles articulated in *Baral* and *Bonni* in mind, we now turn to the facts of the present case.

## II. The trial court did not err by denying LAUSD's special motion to strike.

As noted above, plaintiff's operative complaint asserts seven causes of action: retaliation, age discrimination, and disability discrimination in violation of FEHA (first, second, and third causes of action); failure to provide reasonable accommodation in violation of FEHA (fourth cause of action); constructive termination and discrimination in violation of public policy (fifth and sixth causes of action); and breach of implied-in-fact agreement not to terminate without good cause (seventh cause of action). Each cause of action alleges the same adverse employment action: that plaintiff was constructively discharged.[3]

" 'Constructive discharge, like actual discharge, is a materially adverse employment action.' [Citation.] 'Constructive discharge occurs when the employer's conduct effectively forces an employee to resign. Although the employee may say "I quit," the employment relationship is actually severed involuntarily by the employer's acts, against the employee's will. As a result, a constructive discharge is legally regarded as a firing rather than a resignation. [Citation.]' (*Turner v. Anheuser-Busch* (1994) 7 Cal.4th 1238, 1244–1245 (*Turner* ).)

---

[3] An adverse employment action is a required element of each of plaintiff's claims. (E.g., *Doe v. Department of Corrections & Rehabilitation* (2019) 43 Cal.App.5th 721, 734 [adverse employment action is essential element of discrimination and retaliation claims]; *Shirvanyan v. Los Angeles Community College Dist.* (2020) 59 Cal.App.5th 82, 89 [disabled employee may sue to recover for harm suffered as result of employer's failure to reasonably accommodate]; CACI 2500 [disparate treatment], 2505 [retaliation], 2541 [reasonable accommodation].)

13

" 'In order to establish a constructive discharge, an employee must plead and prove, by the usual preponderance of the evidence standard, that the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign.' (*Turner, supra,* 7 Cal.4th at p. 1251.) To be 'intolerable' or 'aggravated,' the employee's working conditions must be 'sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer. The proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee.' (*Id*. at p. 1246.) 'The essence of the test is whether, under all the circumstances, the working conditions are so unusually adverse that a reasonable employee in plaintiff's position " ' "would have felt compelled to resign." ' " [Citation.]' (*Id*. at p. 1247.)" (*Steele v. Youthful Offender Parole Bd*. (2008) 162 Cal.App.4th 1241, 1253, fn. omitted; see also *Pinter-Brown v. Regents of University of California* (2020) 48 Cal.App.5th 55, 60–61 [to prove constructive discharge, plaintiff had to prove that defendant, through its officers, directors, managing agents or supervisory employees, "intentionally created or knowingly permitted working conditions so intolerable a reasonable person in her position would have no reasonable alternative except to resign."].)

The operative complaint alleges that LAUSD constructively discharged plaintiff by "act[ing] in bad faith in investigating [plaintiff's] claims of wrongdoing and misbehavior of other

14

LAUSD employees" and by "using the relentless investigation and extreme 'micro-managing' of [plaintiff's] activities and classroom performance as a pretextual basis and excuse to retaliate and harm [plaintiff] and force her from her employment as a LAUSD teacher." Specifically, the complaint alleges, among other things, that during the 2016–2017 school year, plaintiff was assigned an excessive number of students with behavioral issues, and during the 2017–2018 school year, plaintiff was assigned to work with a teacher who previously had bullied plaintiff and who physically threatened and retaliated against her. During the 2018–2019 school year, plaintiff was assigned to work with a teacher who disrupted plaintiff's classroom and physically abused students; was forced to continue working with that teacher even after plaintiff requested she be removed from plaintiff's classroom; was falsely accused of slapping a student and getting into another teacher's "space"; was visited by the school police and asked if she was a threat to herself or others; was prevented from properly supervising her students and called a vulgar name by another teacher; and was physically assaulted by a student. Thereafter, after plaintiff was placed on stress leave, LAUSD sent negative letters written by parents of plaintiff's students to the EEOC without making them available to plaintiff, and various LAUSD employees "made deliberately false and defamatory accusations of severe misconduct by [plaintiff] (i.e., misconduct or abusive conduct toward her students)."

LAUSD appears to acknowledge that plaintiff's claim of constructive discharge is based on both protected and unprotected acts, but it urges that the protected conduct is essential to each cause of action, and thus the trial court should have required plaintiff to demonstrate arguable merit as to the

15

*whole* of each of plaintiff's causes of action.  Not so.  Under *Baral*, when relief is sought based on allegations of both protected and unprotected activity, *"the unprotected activity is disregarded . . .* [and] the burden shifts to the plaintiff to demonstrate that each challenged claim *based on protected activity* is legally sufficient and factually substantiated."  (*Baral, supra,* 1 Cal.5th at p. 396, italics added; see also *Bonni, supra,* 11 Cal.5th at p. 1010 [quoting *Baral*].)  Plaintiff's burden to demonstrate arguable merit therefore extended only to claims alleging protected activity.

LAUSD attempts to distinguish *Baral* and *Bonni*, urging that constructive termination is a "*cumulative* doctrine that is based on a *collective* set of facts that together lead to a constructive termination."  In other words, it urges, "because all of the wrongful termination causes of action were based upon a constructive termination, and the constructive termination was based, in whole or in part, on protected activity which plaintiff alleged *cumulatively* amounted to the adverse employment action of constructive termination, the trial court was required to analyze prong two [of the anti-SLAPP analysis] in relation to the wrongful termination causes of action in their entirety, rather than analyzing the merit of only isolated allegations."

We do not agree.  As we have described, in *Bonni* the plaintiff alleged "a nonexhaustive list of at least 19 distinct acts or courses of conduct allegedly undertaken in retaliation for Bonni's complaints of unsafe conditions."  (*Bonni, supra,* 11 Cal.5th at p. 1009.)  Even though these acts were alleged to comprise a single retaliatory course of conduct, which began with the suspension of plaintiff's staff privileges and culminated in the termination of those privileges after peer review, the trial court

16

should have "analyze[d] each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts [were] protected and, if so, whether the claim they give rise to ha[d] the requisite degree of merit to survive the motion." (*Id.* at p. 1010.)

The present case is analogous. As in *Bonni,* plaintiff here has alleged a series of acts—some protected, some not—that individually and collectively are alleged to make out a claim of constructive termination. Thus, while LAUSD may seek to strike those claims that are alleged to arise out of protected conduct, it is "not entitled to wholesale dismissal of these claims under the anti-SLAPP law."[4] (See *Bonni, supra,* 11 Cal.5th at p. 1004.)

We reach a similar conclusion with respect to LAUSD's contention that plaintiff's FEHA retaliation and discrimination claims should have been entirely stricken from the complaint because all of the allegedly discriminatory and retaliatory actions are protected conduct under the anti-SLAPP statute. Not so. As the trial court correctly concluded, the protected conduct is "not coextensive with the causes of action framed in the Complaint." To the contrary, the complaint alleges that LAUSD discriminated and retaliated against plaintiff in many ways, over a series of years. The trial court therefore did not err by refusing to strike the complaint in its entirety.

---

[4] Of course, if the remaining alleged acts are insufficient to state a claim for constructive termination, as LAUSD asserts, then some or all of plaintiff's causes of action may be subject to dismissal or summary disposition. Any such insufficiency, however, must be addressed by another procedural mechanism, not an anti-SLAPP motion.

## DISPOSITION

The anti-SLAPP order is affirmed.  Plaintiff is awarded her appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:


EGERTON, J.


KIM, J.*

---

\*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.