Filed 12/5/22  In re K.A. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re K.A., a Person Coming Under the Juvenile Court Law. | B317747 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. 21CCJP03443A |
| Plaintiff and Respondent, | |
| v. | |
| I.A., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Debra R. Archuleta, Judge.  Vacated in part, affirmed in part.

Aida Aslanian, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

On November 30, 2021, the juvenile court declared K.A.—born October 2020 when mother was 18 years old and father was 30 years old—a juvenile dependent under Welfare and Institutions Code section 300, subdivisions (a) and (b).[1] In this appeal, father challenges the court's jurisdictional finding based on father's sexual abuse of mother in 2019, when she was 16 years old, and the court's disposition order requiring he attend sexual abuse counseling for perpetrators. He does not challenge the court's jurisdictional finding based on domestic violence altercations between parents. Nevertheless, we exercise our discretion to consider the merits of father's appeal. Because the juvenile court found no nexus between father's past sexual abuse of mother and a substantial risk of physical harm to, or sexual abuse of, K.A., we reverse the juvenile court's finding of jurisdiction on that basis. We affirm the disposition order, finding no abuse of discretion.

## FACTS AND PROCEDURAL HISTORY

Consistent with our standard of review, we state the facts in the light most favorable to the juvenile court's findings, resolving all evidentiary conflicts and indulging all reasonable inferences to uphold the court's order. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

**1.** ***Mother's earlier dependency case as a minor***

The Department filed a section 300 dependency petition on behalf of mother when she was 16 years old after she reported,

---

[1] Statutory references are to the Welfare and Institutions Code. Mother is not a party to this appeal.

2

in March 2019, father had sexually and physically abused her.[2] According to a sheriff's department report, mother met father in November 2018 in Fairfield, California when she was 16 (born August 2002) and father was 28 (born January 1990). Mother, whose parents are deceased, had come to California from Missouri where she lived with her grandmother who was her legal guardian.[3] Mother and father began a sexual relationship when mother moved in with father in Vallejo, California sometime after they started dating in December 2018.[4] They arrived in Los Angeles in March 2019.

On March 20, 2019, mother told a police officer father had sexually assaulted her two days earlier. She told the sheriff's deputy, who responded to the call, father had forced her to take "an unknown crystalline substance," physically assaulted her, and then had sex with her. Mother said that during their three-month relationship, father forced her to take illegal narcotics (possibly cocaine or methamphetamine) before having sex. If she

---

[2] That petition did not include allegations of father's sexual or physical abuse, however.

[3] The Department's March 2019 detention report stated mother had taken a road trip with her adult siblings in August 2018 from Missouri to Fairfield, California to visit a half-sibling. She decided to stay with the half-sibling instead of returning to Missouri.

[4] Mother told the social worker who interviewed her in March 2019 that she had met father in December 2018 and began living with him in January 2019. Mother said their sexual relationship and father's physical abuse began shortly after their meeting.

refused, father would physically assault her. Mother said father "never forcibly had sex with her," however. Mother never sought help because father never let her leave. This time, mother had locked herself in a grocery store office where she phoned for help.

Father denied physically assaulting mother, said he thought mother was 22 years old, and said they had consensual sex. Father was arrested for having unlawful sexual intercourse with a person under age 18. Mother consented to a sexual assault examination.

Mother's grandmother, maternal great grandmother, said she no longer could care for mother and rescinded her legal guardianship. The Department then filed its section 300 petition alleging mother's lack of a parent or legal guardian placed her at risk of serious harm. The Department provided mother with permanent placement services until August 2020, when she would turn 18, but mother left her placement in March 2019 and did not return.[5] As mother's whereabouts remained unknown, the petition never was adjudicated.

## 2. *Current dependency case*

The current matter arose after police responded to a 911 call on June 28, 2021, about a fight in progress at a hotel. Parents were arguing in their hotel room. After father allegedly pushed mother, he picked up K.A., and—as he was walking away—mother threw the room's telephone at the back of father's head.

---

[5] In late May 2019, the Department responded to a second report of abuse. This time, mother said father sometimes forced her to have sex and to use cocaine during sex, but sometimes the sex and drug use were consensual. Father was arrested, and a restraining order was issued against him.

Father put K.A. down on the bed and again walked away, but mother allegedly pushed father from behind and began choking him.  Mother said father had pushed her and, before K.A. was born, had hit her.  Law enforcement arrested mother, as the primary aggressor, for misdemeanor domestic violence.  Father asked for and was granted an emergency protective order, as well as temporary custody of K.A.

A Department social worker spoke separately with each parent about their relationship and the incident.[6]  Mother admitted she threw the phone at father after their argument escalated when father tried to leave with K.A.  Mother also said she was the victim in past domestic violence incidents with father where he had kicked her and broken her ribs and slapped or punched her.  She did not believe father would harm K.A., however.

Mother said K.A. was born in Missouri.  She said she didn't have any friends or family as a support system and wasn't close to paternal relatives.  Mother did not want her relationship with father to end; she wanted to participate in couple's counseling.

Father became defensive when the social worker asked him how he and mother met, stating, " 'What does that have anything to do with [K.A.]?  I'm not going to incriminate myself.' "  When asked about the incident, father said he was the victim.  Father revealed child protective services had been involved with the family in Missouri.  Mother had been staying with maternal aunt there.  Father said mother took one of maternal aunt's

---

[6]     Mother apparently had returned to father and K.A.'s hotel room after the emergency protective order expired.

5

barbiturates while she was pregnant and "test[ed] dirty" when she delivered K.A. He said the investigation was closed with no concerns for abuse or neglect.

At first, father said he did not want to continue his relationship with mother. Later, he said he wanted to continue the relationship and was willing to participate in couple's counseling.

The social worker contacted the Missouri social worker. He said there had been two investigations involving the family. More recently, mother allegedly had attacked father. At K.A.'s birth, the hospital staff was concerned with the family's living situation—parents were temporarily staying in a hotel—not substance abuse. The social worker said neither mother nor K.A. tested positive for any substances at K.A.'s birth.

On July 22, 2021, the Department obtained a court order to remove K.A. from both parents. The Department then filed a section 300 petition on behalf of K.A. on July 26, 2021. The petition alleged, under section 300, subdivisions (a) and (b)(1), K.A. was at substantial risk of suffering serious physical harm based on parents' history of engaging in violent altercations, including the June 28, 2021 incident and earlier incidents of violence, several of which involved father as the aggressor (counts a-1 and b-1). Under section 300, subdivisions (b)(1) and (d), the petition alleged K.A. was at substantial risk of suffering serious physical harm and/or sexual abuse due to father's sexual abuse of mother when she was 16 years old, which included "sexual intercourse and digital anal penetration" (counts b-2 and d-1). At the July 29, 2021 detention hearing, the juvenile court found the Department had made a prima facie case that K.A.

6

was as described by section 300, ordered K.A. detained from both parents, and granted parents monitored visitation.

In August 2021, the continuing services social worker spoke to mother by phone. Mother was living in Missouri with her brother because she had no family or financial support, other than father, in California. Mother was working three jobs and planned to start anger management and counseling sessions. She planned to return to California for K.A.'s first birthday. She said she had not spoken with father " 'in a while.' " As of the completion of the Department's jurisdiction/disposition report, mother had not responded to the investigating social worker's request to set a time for her interview.

Mother and maternal aunt B.R. in Missouri both asked that B.R. be assessed as a possible placement for K.A. Maternal aunt said mother and K.A. stayed with her from Christmas 2020 until March 2021, when they had returned to California.

Father would not speak with the investigating social worker. He told the continuing services social worker he had completed parenting classes, a blood test, and a drug test. He also said he had driven to Missouri to pick up mother so they could "be together again," but mother did not show up at the designated meeting point. He started crying, explaining he "want[ed] his family to be together again and hope[d] everything w[ould] work out." He said he and mother had been in contact with each other since the detention hearing.

In its report, the Department stated it had assessed the family as highly at risk for future abuse or neglect. It noted that, over the course of four years, there had been several domestic violence incidents with both parents named as the aggressor. The Department stated parents did not appear to understand

its concern for K.A.'s safety. Despite their long history of an aggressive relationship, parents had continued to remain together, although mother recently had moved to Missouri. The Department described father's attempt to pick up mother as an effort to "continue their relationship" and stated father hoped they would "rekindle" the relationship "in the future."

In anticipation of the adjudication hearing, father provided the Department with an August 10, 2021 certificate of completion for a parenting course, and negative results from a drug test he took on August 11, 2021. He also submitted a certificate of completion for a security officer training course he received in February 2017, a certificate of completion for a veterinary emergency care course he completed in August 2018, and recommendation letters from veterinarians and colleagues for and with whom he had worked as a veterinarian technician or assistant in the past.

On September 22, 2021, the investigating social worker finally was able to interview mother by phone about the petition's allegations. Mother had completed a few of her anger management classes but said she was struggling financially and with balancing time. Mother had reestablished her relationship with her family in Missouri. She told the social worker she no longer was communicating with father and did not plan to get back together with him. Referring to the sex abuse allegations, mother admitted " 'what happened is in the past but it did happen, what has been written on paper is true.' " Mother was working two jobs "to get on [her] feet," and said her family was helping her. She planned to remain in Missouri and hoped to gain joint or full custody of K.A.

In its last minute information for the court report, filed November 23, 2021, the Department reported father was having monitored visits with K.A. once or twice per week, was in a parenting program, and had enrolled in a domestic violence program. Father and the facilitator of the domestic violence program had a disagreement, however, when father did not want to share his story. He feared the men in the group would "give him a hard time" because mother was younger than he was.

## 3. *The November 30, 2021 hearing*

The court convened a combined jurisdiction and disposition hearing on November 30, 2021.[7] Neither parent was present.

---

[7] The hearing had been continued from September 2021 to allow the Department time to interview mother and to receive responses to ICWA-030 notices it had sent to the Bureau of Indian Affairs and the Secretary of the Interior. The court found ICWA did not apply based on a letter from the BIA finding no tribal eligibility for K.A. We note the Department gave only general notice to the BIA and Secretary of the Interior, listing most of the fields as "unknown." Although the Department knew maternal great grandmother's name, it listed her name as "unknown" in the ICWA-030 notices. And, despite knowing maternal grandparents were deceased, the Department neither noted they were nor listed their names, which we presume mother had. The court also ordered the Department to talk to maternal great grandmother about mother's possible Indian heritage, but it is unclear if anyone did. There is no indication the Department spoke to any paternal relatives. If it has not done so already, we strongly encourage the Department to speak to available maternal and paternal extended family members about parents' possible Indian heritage, document those efforts, and comply with any applicable notice requirements. (See § 224.2, subds. (b), (e), (f).)

The court found notice was proper, received the Department's reports—as well as father's exhibits (his parenting certificate and negative drug test)—into evidence, and took judicial notice of the case file from mother's earlier dependency matter.

K.A.'s counsel asked the court to sustain the petition as written, arguing father "had a predatory abusive relationship" with mother, inflicted "continuous sexual and physical abuse" on her, and had exerted control over mother to the point that she was not permitted to speak to her family in Missouri. Although mother did not join father when he drove to Missouri to rekindle their relationship, both K.A.'s and the Department's counsel were concerned parents would resume their relationship—as they had in the past—and continue to put K.A. at risk.

The Department's counsel also argued, "the sexual abuse of the father to the mother while she was a minor is of a nature so aberrant that any child would be at risk if exposed to such a sexual abuser." Counsel asserted that, because father was not simply having sex with an underage minor—as he "portray[ed]"—but also committing sexual acts "not of a regular relationship" and without mother's consent, K.A. would be at risk if left in father's care without supervision. Both parents' counsel argued K.A. was differently situated from mother, there was no risk father would sexually abuse his own child based on his having had a sexual relationship with mother when she was 16, and nothing indicated father ever had a sexual interest in K.A.

After hearing argument, the juvenile court sustained the petition's a-1 and b-1 counts based on parents' domestic violence. The court dismissed the d-1 count, stating it agreed there was an insufficient nexus between father's sexual abuse of mother

10

and a risk to K.A. "given the nature of the behavior and the conduct alleged in those circumstances."

Nevertheless, the court sustained the first sentence in the b-2 count that father had sexually abused mother when she was 16 years old, "including sexual intercourse and digital anal penetration." The court struck, through interlineation, the second sentence from the b-2 count, as follows: "Such sexual abuse by the father towards the mother endangers the child's physical health and safety and places the child at risk of serious physical harm, damage, danger and sexual abuse." The court explained,

> "I do not believe, although the behavior is aberrant, correct, that there's a nexus of the conduct between mother and father, which is why the court dismissed the (d)(1) allegation. However, I do find a preponderance of the evidence that there was sexual abuse between father and mother when she was 16 years old. And I do find that portion of the allegation to be true. And I will sustain that, given the modification the court will be making shortly."

The court then moved to disposition. The Department's proposed case plan recommended father participate in drug testing; parenting classes; individual counseling, and conjoint counseling with mother if they decided to reconcile; a domestic violence batterer's program; and sex abuse counseling for perpetrators.

After discussion about the child's current placement, assessing maternal aunt in Missouri for placement, and issues in mother's case plan, the court asked father's counsel if she

11

wished to be heard.  Father's counsel asked for paternal great aunt to be assessed for placement.  She then asked the court to clarify that the conjoint counseling was not with K.A., who was too young to participate.  Counsel also asked that the order for drug testing be upon reasonable suspicion.

The court ordered K.A. to be removed from parents' custody and to remain in his current placement in foster care.  As to father's case plan, the court ordered drug testing upon reasonable suspicion, a 52-week batterer's intervention program, conjoint counseling with mother if they were reconciling, parenting classes, individual counseling, sexual abuse counseling for perpetrators, and monitored visitation with K.A.  Father appealed.

## DISCUSSION

### 1. *We exercise our discretion to consider father's appeal*

The Department urges us to dismiss father's appeal as moot because he does not challenge the juvenile court's jurisdictional findings based on the domestic violence between parents.  Father, on the other hand, asks us to exercise our discretion to consider the merits of his appeal because the jurisdictional finding based on his past sexual abuse of mother could prejudicially affect his right to custody in this case, and possible future cases, and was the basis for the court's disposition order requiring him to attend sexual abuse counseling for perpetrators.

" 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the

petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' " (*In re I.J.* (2013) 56 Cal.4th 766, 773.) We have discretion, however, to review a parent's challenge to any jurisdictional finding where that finding could prejudice the parent or have ramifications for the parent beyond jurisdiction. (*In re Drake M.* (2012) 211 Cal.App.4th 754, 762–763.)

A jurisdictional finding based on father's past sex abuse could have adverse effects on father beyond those resulting from the jurisdictional finding based on domestic violence. (See, e.g., *Blanca P. v. Superior Court* (1996) 45 Cal.App.4th 1738, 1752 [charge of sexual abuse of child carries significant "social opprobrium"]; *In re Daisy H.* (2011) 192 Cal.App.4th 713, 716 [challenge to a jurisdictional finding generally not moot if the purported error "could have severe and unfair consequences to [the parent] in future family law or dependency proceedings"].) Father also challenges the court's dispositional order that he contends has no basis in the absence of the sex abuse finding. (*In re J.N.* (2021) 62 Cal.App.5th 767, 774 [appellate court generally will reach merits of challenge to jurisdictional finding that serves as the basis for a challenged dispositional order].) We thus exercise our discretion to review father's challenge to that jurisdictional finding.[8]

---

[8] Our Supreme Court has granted review to decide whether an appeal of a jurisdictional finding is in fact moot when the parent asserts that he or she has been or will be stigmatized by the finding. (*In re D.P.* (Feb. 10, 2021, B301135) [nonpub. opn.], review granted May 26, 2021, S267429.)

13

**2.**     *The court erred in finding jurisdiction under section 300 based on father's past sexual abuse of mother*

Section 300, subdivision (b)(1) authorizes dependency jurisdiction where the evidence proves "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of the child's parent or guardian to adequately supervise or protect the child."  "In order to sustain a petition under section 300, a significant risk to the child must exist ' "at the time of the jurisdiction hearing." ' [Citations.]  [The Department] 'has the burden of showing specifically how the minor[ ] ha[s] been or will be harmed.' [Citation.]  Evidence of past conduct may be probative of current conditions, and may assist [the Department] in meeting this burden.  [Citations.]  However, [the Department] must establish a nexus between the parent's past conduct and the current risk of harm." (*In re J.N., supra*, 62 Cal.App.5th at p. 775.)  We review the juvenile court's jurisdictional and dispositional findings for substantial evidence.  (*In re I.J., supra*, 56 Cal.4th at p. 773.)

As we said, father does not challenge the juvenile court's jurisdiction finding under section 300, subdivision (b) that K.A. is at substantial risk of harm based on the incidents of domestic violence between parents.  Rather, father contends there was no evidence demonstrating his sexual relationship with mother when she was 16 posed a current risk of harm to their then-ten-month-old son.

We agree.  The three elements of jurisdiction under section 300, subdivision (b), as relevant here, are (1) conduct by the parent in one of the specified forms; (2) causation; and

14

(3) substantial risk of serious physical harm. (*In re Cole L.* (2021) 70 Cal.App.5th 591, 601; see also *In re R.T., supra,* 3 Cal.5th at p. 624.) The court sustained the allegation in count b-2 that father, "[o]n multiple prior occasions," sexually abused mother when she "was sixteen years old, including sexual intercourse and digital and anal penetration." Substantial evidence in the record supports that finding. Nevertheless, the court struck as unfounded the allegation in count b-2 that "[s]uch sexual abuse by the father towards the mother endangers the child's physical health and safety and places the child at risk of serious physical harm, damage, danger and sexual abuse."

In other words, the juvenile court expressly found father's sexual abuse of mother when she was 16 years old *did not cause* K.A. to be at substantial risk of serious physical harm. Having found no nexus between father's past sexual abuse of mother and any risk of physical harm to, or sexual abuse of, K.A., the juvenile court was not authorized to exercise its jurisdiction over K.A. based on the b-2 count.

Yet, the Department contends substantial evidence supports finding father's sexual abuse of mother placed K.A. at current, substantial risk of physical harm. It notes father's abuse included tying mother up, putting objects into her vagina and anus, and supplying her with cocaine and crystal methamphetamine before sexually abusing her. But the petition's b-2 count did not allege those facts, and the Department did not amend the petition to include them. Nor did the Department separately appeal from the court's finding that father's sexual abuse of mother did not put the child at current risk of physical harm. Its contention that substantial evidence nevertheless supports a finding that father's past sexual abuse of

15

mother in fact placed K.A. at substantial risk of harm—contrary to the juvenile court's express ruling—is not before us. (See, e.g., *Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 665 [generally, party responding to appeal may not urge error without filing cross-appeal].) Simply put, without a finding that father's sexual abuse placed K.A. at substantial risk of physical harm, a jurisdictional finding based on the b-2 count cannot stand.

3. ***The court did not abuse its discretion in ordering father to participate in sexual abuse counseling***

We initially address the Department's contention father forfeited any challenge to the sexual abuse counseling order because he did not object to it in the juvenile court. (See *In re Elijah V.* (2005) 127 Cal.App.4th 576, 582 ["A parent's failure to raise an issue in the juvenile court prevents him or her from presenting the issue to the appellate court."].) Father argues any objection would have been futile as he already had objected to the b-2 jurisdictional count.[9] (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1001 ["There is a general exception to the forfeiture rule for instances when an objection would have been futile."]; *ibid.* [sibling visitation issue not forfeited on appeal where request to juvenile court would have been futile when court had ruled child was not a sibling].) Even if we assume father did not forfeit his right to challenge the disposition order,

---

[9] The only part of the disposition plan to which father's counsel objected was the drug testing requirement. As father did not have a history of drug use, counsel asked that drug testing be required only upon reasonable suspicion. The juvenile court agreed.

16

we cannot conclude its sexual abuse counseling requirement was in error.

"We review the juvenile court's disposition case plan for an abuse of discretion. 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.' [Citations.]" (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071 (*D.P.*).) "A court exceeds the limits of legal discretion if its determination is arbitrary, capricious or patently absurd. The appropriate test is whether the court exceeded the bounds of reason." (*In re L.W.* (2019) 32 Cal.App.5th 840, 851.)

"Section 362, subdivision (d) authorizes the juvenile court to 'direct any reasonable orders to the parents' of a dependent child as the court deems necessary and proper to ensure appropriate care, supervision, custody, conduct, maintenance, and support of the child." (*D.P., supra*, 44 Cal.App.5th at p. 1071; see also § 362, subd. (a).) "The order may include 'a direction to participate in a counseling or education program,' provided that the 'program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300.' " (*D.P.*, at p. 1071, quoting § 362, subd. (d).)

Nevertheless, "[t]he problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. [Citation.] In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order. [Citation.]" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) Thus, "the juvenile court is not limited to the content of the sustained petition when it considers what

17

dispositional orders would be in the best interests of the children. [Citations.] Instead, the court may consider the evidence as a whole." (*Ibid.*)

Father contends the court abused its discretion in ordering him to participate in sexual abuse counseling for perpetrators "solely because he had engaged in sexual relations with [m]other when she was 16." He argues the ordered counseling "was not reasonably designed to eliminate the conditions which led to his son's dependency action," as the court found father's sex abuse of mother did not place K.A. at risk. We disagree.

The evidence as a whole supports the court's order requiring father to participate in sexual abuse counseling for perpetrators. Although K.A. may not have been specifically at risk of physical harm or sexual abuse because father had sex with mother when she was a minor, the juvenile court reasonably could conclude the issues leading to that abuse remained unaddressed and were relevant to father's ability to parent his son. For one, the evidence supports an implied finding that father's past sexual abuse of mother involved more than a "grave mistake" of having sex with an underage teenager. (*In re B.T.* (2011) 193 Cal.App.4th 685, 688–689, 694, 697–698, relied on by father [finding 38-year-old mother's unlawful but "consensual sexual relationship with an unrelated 15-year-old boy" did not support dependency jurisdiction over their baby and vacating disposition order].) In 2019, mother reported father sometimes tied her up and forced her to have sex, gave her cocaine and methamphetamine before having sex with her—and physically abused her if she did not take the drugs—and put foreign objects into her vagina and anus. She also said her sexual relationship with father was not always consensual.

18

Those facts were not alleged in the petition, but the court could—and we presume did—consider them, and the unchallenged jurisdictional findings, in determining what dispositional orders would be in K.A.'s best interest. (*In re Briana V., supra*, 236 Cal.App.4th at p. 311.) Based on that evidence, it would not be unreasonable for the juvenile court to find father's participation in sex abuse counseling was necessary to protect K.A. from the risk of exposure to father again perpetrating this type of abuse on mother (or some other future partner) irrespective of her age.

That K.A. faced a risk of exposure to what the Department and the court described as father's "aberrant" behavior toward mother is supported by the record. After all, mother had continued her relationship with father despite father's abuse of her in 2019, and, after the June 2021 domestic violence incident, father said he wanted to continue a relationship with mother. Indeed, in August 2021 father drove to Missouri to bring mother back to California "so they c[ould] be together again." When his plan did not work out, father became emotional with the social worker, explaining he "want[ed] his family to be together again and hope[d] everything w[ould] work out." The court, therefore, reasonably could find father would try to rekindle parents' relationship and their co-parenting of K.A.

Nor do we agree counseling for sexual abuse predators was unrelated to the unchallenged jurisdictional finding based on parents' violent altercations with each other, as father seems to argue. At the hearing, after describing what appeared to the court "to be mutual combat and domestic violence," the court stated it could "envision a situation where this woman is drugged and treated in a manner maybe not conducive to harmonious

19

relations." We can infer the court found a connection between father's sexual abuse of mother and the issues leading to parents' domestic violence. Substantial evidence supports that finding. As we noted, the record shows father physically assaulted mother and forced her to use drugs in connection with sex. The sustained—and unchallenged—a-1 and b-1 counts also describe several physical altercations between parents where father was the aggressor. Accordingly, it would not have been arbitrary or absurd for the court to have determined father's addressing of the issues that led to his sexual abuse of mother could ameliorate the domestic violence between parents, and the risk that violence posed to K.A.'s safety and well-being.

## DISPOSITION

The jurisdictional order is reversed to the extent it is based on count b-2, as amended through interlineation; it is affirmed in all other respects.  The dispositional order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

We concur:


EDMON, P. J.


RICHARDSON (ANNE K.), J.*

---

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.