Filed 6/2/23  Breja v. Breja CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| NEHA DUA BREJA,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>SIDDHARTH BREJA,<br><br>     Defendant and Respondent. | A164778<br><br>(San Francisco City and County Super. Ct. No. FDI-21-795427) |

Neha Dua Breja appeals an order denying her requests for a domestic violence restraining order against respondent Siddharth Breja and sole custody of the couple's child, S.B.  She contends the court abused its discretion in finding she failed to establish a factual basis for a restraining order, excluding supporting declarations, and ordering joint custody.  We affirm.

### BACKGROUND

In November 2021, while the couple's divorce case was pending, Neha[1] filed a request for a domestic violence restraining order, child custody, and spousal and child support.  She alleged two instances of abuse.  The first occurred on February 29, 2020, when Siddharth "abused" her, apparently by shouting at her during an argument; struck his own face "till his face turned blue and had bumps;" and held her hand tightly until she threatened to call 911.  Siddharth backed off, but continued to "abuse" Neha

---

[1] We will refer to the parties by their first names for clarity.

1

and her parents (who were in India) in a phone call to his own parents in India.

The second incident occurred almost two years later, on November 7, 2021, when Neha served Siddharth with legal separation papers while he was visiting S.B. at her home. According to Neha, Siddharth cursed at her and her parents, threatened to obtain full custody, and said he would "show you guys." Neha maintained Siddharth had neglected S.B. since August 2020 and "had the potential to" physically and emotionally harm their son due to his "volatile temperament and aggression."

In his opposition, Siddharth recounted that Neha had taken S.B. to India in August 2020 without his knowledge or consent. He followed them there in December but in July 2021 Neha returned with S.B. to San Francisco, again without notifying Siddharth.

Siddharth maintains that he returned to the United States in November 2021. On November 7, the day after his return, he visited S.B. at Neha's home. He neither asked Neha for full custody nor cursed at or threatened her or her parents. As he left Neha's house, her landlord (A.H.) served him with legal separation papers. Siddharth asked A.H. to give him a moment with Neha, but he did not raise his voice, the couple did not argue, and there was no violence. The next day Siddharth met Neha and A.H. at S.B.'s school; A.H. offered to give him a ride back to their house.

Siddharth denied that he ever hit himself (much less until he turned blue and had bumps), restrained Neha by grabbing her hand, or otherwise abused her. He had no idea how it was possible for him to have abused Neha and her parents during a phone call to his parents in India. He asked the court for joint legal and physical custody and visitation.

2

On November 30, 2021, a day before the scheduled hearing, Neha filed two supplemental declarations. One, from A.H., reiterated Neha's claim that Siddharth had cursed and yelled at her when he visited S.B. on November 7. His behavior was "forceful and insistent" when he met her and Neha at S.B.'s school the next day. The second declaration, apparently from a staff member at S.B.'s school, recounted that Siddharth had twice visited the school and conversed with her. He was "cordial and polite," but commented that he would get full custody of S.B. because of his wealth.

The hearing was continued to January 26, 2022. On January 24, Neha filed and served five additional declarations. Four were transcriptions of telephone conversations she had with Siddharth in 2020 and 2021. The fifth was a 12-page, single spaced "chronological and faithful account, to the best of my knowledge and belief, of the last 4 years of my marriage with Siddharth Breja," supported in part with references to the transcriptions.

At the outset of the hearing, the court clarified with Neha that she had recorded the transcribed calls without Siddharth's knowledge. The court explained that this was illegal and struck all five declarations. It then asked Neha whether she wanted to add to or change anything in her original declaration. She declined.

The court questioned Neha at length about her basis for seeking a restraining order. She responded that she felt isolated in San Francisco without family, friends or resources. She feared Siddharth because "each time when you do not comply by what he wants, you know, he - - his way is that 'It is my way or I force it through anything,' through any means - - throwing things on me, or, you know, coming close to me. And, like, the last time he just held my hand. I know with every passing step it was only increasing."

3

The court prompted Neha to describe specific occasions when Siddharth threw things at her. Neha said that in April 2018 he had become upset during an argument and threw his eyeglasses onto the ground or a shopping cart. In January 2019, during another argument, he threw her phone across the room at her. The phone landed at her feet. In February 2020, during a dispute about her parents, Siddharth threw a dining room chair onto the floor and broke it. A week later, he called his mother in India and "started abusing me and my parents . . . and then he used curse words for my parents." A week after that, he struck himself and then held her right hand until she said she would call 911. Finally, that summer Siddharth "started yelling and abusing" her in front of S.B. during an argument in a hotel lobby.

Siddharth gave a different version of these events. He reiterated that Neha had taken their son to India and then back to the United States without informing him. In India they had argued in a hotel lobby, but that was all. Siddharth never threw a phone, a chair, or anything else at Neha; nor did he hit himself. Neha's allegations were intended to alienate him from S.B. and retaliate for his filing for divorce and not giving in to her financial demands.

Invited by the court to respond, Neha said Siddharth had been threatening her with divorce since S.B.'s birth and that he tracked her phone, mail, credit cards, and social media. After she returned from India he threatened to " 'make a mockery' " of her and S.B. He cursed when A.H. served him with the separation papers, and he tried to talk to S.B. at inconvenient times. Moreover, he did not take appropriate responsibility for the child's schooling and insurance.

The court stated it had reviewed all of Neha's submissions, including her November 30, 2021, and January 24, 2022, declarations, but that its focus was on her live testimony. It explained: "The [declarations] that she filed most recently are a

4

violation of the rules. So I'm going to strike those that were filed on January 24th. But the other declarations she submitted don't really change my mind one way or the other. It's really her testimony today about a number of incidents that have happened[.]"

The court denied the request for a restraining order. It noted, "[i]t's not that I don't believe what you say happened. I'm taking into consideration, sort of, the timing of the development of the case. So I'm not disputing that what you say is correct." The court found the incidents in which Siddharth broke things or hit himself had occurred more than a year earlier, and, more recently, his "somewhat understandable" verbal reaction after being served with the separation papers did not warrant a restraining order. The court awarded joint legal and physical custody and ordered the parties to communicate only through text messaging except in emergencies.

## DISCUSSION

### A.

Neha contends the court abused its discretion in denying the restraining order because she proved by a preponderance of the evidence that Siddharth's actions made her reasonably fear for her safety. We do not question that, on this record, the court *could* have found in her favor. (To be clear, we do not decide that question.) The issue, however, is whether its contrary determination exceeded the bounds of reason. (*Ashby v. Ashby* (2021) 68 Cal.App.5th 491, 509 [restraining order]; *S.Y. v. Superior Court* (2018) 29 Cal.App.5th 324, 333-334 [child custody].) It did not.

The Domestic Violence Prevention Act (Fam. Code, § 6200 et seq. (the Act))[2] permits a court to issue a protective order for the purpose of preventing a recurrence of domestic violence upon

[2] Undesignated statutory references are to the Family Code.

5

"reasonable proof" of past abuse.  (§§ 6220, 6300; *Gonzalez v. Munoz* (2007) 156 Cal.App.4th 413, 420.)  "Abuse" in this context includes intentionally or recklessly causing or attempting to cause bodily injury, placing a person in reasonable apprehension of imminent serious bodily injury, molesting, threatening, harassing, and disturbing the peace of the other party.  (§§ 6203, 6320, subd. (a).)  " '[D]isturbing the peace of the other party' " includes a pattern of behavior that unreasonably interferes with the other person's free will and personal liberty and which may include controlling, regulating, or monitoring the person's movements, communications, daily behavior, or finances.  (§ 6320, subd. (c).)

Our review is for abuse of discretion.  (*In re Marriage of Davila and Mejia* (2018) 29 Cal.App.5th 220, 226.)

Neha asserts the court abused its discretion by incorrectly evaluating the evidence.  Specifically, she faults (1) its determination that the occasions when Siddharth destroyed things (presumably the chair) or hit himself were too far in the past to warrant a restraining order; and (2) its failure to find Siddharth abused her by tracking her phone, social media, and credit cards.[3]  In other words, she asks us to reweigh the evidence and resolve evidentiary conflicts differently than the trial court—something we may not do.  (*M.S. v. A.S.* (2022) 76 Cal.App.5th 1139, 1145; *Gonzalez v. Munoz, supra,* 156 Cal.App.4th at p. 420 [where two or more inferences can reasonably be deduced from the facts, appellate court has no authority to substitute its judgment for that of the trial court].)

The other incidents Neha described largely consisted of shouting and swearing, most frequently while the couple argued.

_____

[3] In her reply brief, Neha also asserts this was legal error. The assertion is forfeited by her failure to argue legal error in her opening brief.  (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 56.)

The court could reasonably infer from the nature of these events and/or their remoteness in time that they did not indicate a likelihood of future abuse requiring a protective order. (See §§ 6220, 6300, subd. (a) [statutory purpose is to prevent domestic violence and provide parties with a cooling-off period].)

This is so whether or not the court found any of the past incidents—the couple's arguments, Siddharth's throwing the eyeglasses, chair, or phone, hitting himself, "yelling and cursing," or tracking her calls and social media—were abusive within the meaning of the Act.[4] While a restraining order "*may* be issued" (§ 6300, subd. (a), italics added) upon reasonable proof of past abuse, the Act does not, as Neha suggests, *require* the court to issue a protective order upon any showing of past abuse, no matter how remote or insubstantial, if it is unpersuaded of a need to prevent potential future abuse. The court's determination that a restraining order was unnecessary was within its discretion.

Finally, Neha claims the court improperly ordered the parties to restrict their communication to text messaging as a substitute for issuing a restraining order. The claim is contradicted by the record, which clearly shows the court imposed the restriction after it denied the restraining order, "during the course of the custody and visitation orders."

**B.**

Neha next contends the court abused its discretion in excluding the declarations she filed two days before the hearing. It did not. Four of those five declarations were transcriptions of telephone calls rendered inadmissible by Family Code section 2022, subdivision (a) and Penal Code section 632, subdivision (d), both of which proscribe the use of evidence obtained as a result of eavesdropping upon or recording confidential communications.

---

[4] Neha's claim that it is "undisputed" Siddharth isolated her is unsupported by her citations to the record.

Neha is mistaken in claiming those declarations fall within an exception for victims of domestic violence "who [are] seeking a domestic violence restraining order from a court" and reasonably believe a confidential communication may contain relevant evidence. (Pen. Code, § 633.6, subd. (b).) Under those circumstances, the victim may record a confidential communication with the perpetrator to use in court. Neha did not assert this exception in the trial court, so it is forfeited. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114.) In any event, the exception is inapplicable because she recorded the calls in July 2020 and July 2021, sixteen months and four months, respectively, *before* she sought a restraining order.

Neha contends the court abused its discretion in striking the fifth declaration, a "chronology of events which led her to seek a restraining order," as it was not subject to the statutory exclusion the court identified as the basis for its ruling.[5] She forfeited this point as well by failing to object on that ground when the court ordered all five declarations stricken. (*People v. Stowell, supra,* 31 Cal.4th at p. 1114.) Moreover, the court gave Neha every opportunity to testify about the events she believed supported a restraining order, and she testified to her view of the relevant events at length and without any apparent restriction. Accordingly, if there was an abuse of discretion, it was harmless.

## C.

We turn to the joint custody award. Neha asserts the court failed to apply the rebuttable presumption in favor of sole custody triggered by a finding a parent perpetrated domestic violence against the other within the preceding five years. (§ 3044; see

---

[5] We express no opinion as to whether parts of this declaration might have properly been excluded because they referred to and/or incorporated information from the illegal calls.

8

*Celia S. v. Hugo H.* (2016) 3 Cal.App.5th 655, 661-662.)[6] The assertion fails for the simple reason that the court made no such finding.

Neha disagrees, arguing the court's comment that it did not dispute or disbelieve her account of events was a de facto finding of domestic violence. The argument is meritless. First, that the court did not dispute or disbelieve Neha's testimony does not mean it found the events she described amounted to domestic violence. Second, it reasonably could have found joint custody was in S.B.'s best interest, thereby rebutting the presumption. (*Celia S. v. Hugo H., supra,* 3 Cal.App.5th at p. 662.)

## DISPOSITION

The orders are affirmed. Respondent is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278.)

---

[6] Pursuant to section 3044, subdivision (a), "Upon a finding by the court that a party seeking custody of a child has perpetrated domestic violence within the previous five years against the other party seeking custody of the child . . . there is a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child. . . . This presumption may only be rebutted by a preponderance of the evidence."

_____

BURNS, J.

We concur:

_____

SIMONS, ACTING P.J.

_____

LANGHORNE, J.*

A164778

* Judge of the Napa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10